O’NIELL, C. J.
 

 This is a suit for damages for the loss of property accidentally destroyed by fire. The fire was caused by the striking of a match by a boy who was assisting in delivering to the plaintiff a quantity of gasoline which he had bought from the defendant, Gulf Refining Company. The plaintiff contends that the defendant is responsible, under the doctrine of respondeat superior, for the negligence of the driver of the oil truck, in allowing an irresponsible boy to assist in delivering the gasoline, and for the recklessness of the boy in striking the match near the flowing gasoline. The defendant denies liability, on the ground that the gasoline was being delivered not by the company but by an independent contractor, and on the further ground that the truck driver was not acting within the scope of his employment, but was violating orders, when he allowed the boy to accompany him in his work, and that the boy’s striking a match near the gasoline was not within the scope of the employment and in fact was not done by an employé of the company.
 

 The Gulf Refining Company maintained a warehouse or depot at Jonesville, in Catahoula parish, for the sale and distribution of gasoline and oil. J. B. Jones had charge of the business there, as agent for the company. He owned the property and leased it to the company. By the terms of the contract, Jones sold the oil and gasoline for the company at prices fixed by the company, and was not allowed to sell on credit except when authorized by the company. The gasoline and' oil remained the property of the company un
 
 *76
 
 til it was sold and delivered by Jones. He turned in to the company the customers’ receipts or the original bills of lading, and rendered weekly accounts with remittances to the company 'for all of the gasoline and oil sold by him; and the company made remittances to him for his commissions at the end of each month. The commission was 2 cents per gallon on gasoline when sold in cans or tank wagons'; 1% cents per gallon on gasoline sold in original containers, such as drums, barrels, cans or cases; 1 cent per gallon on gasoline shipped by railroad; and 2% cents per gallon on gasoline sold outside of Jonesville and delivered by meansi of trucks owned by Jones and operated by him at his own- expense.
 

 The plaintiff had a store several miles from Jonesville, and, in connection with the business, had a filling station in front’of his store, for the sale of- gasoline and lubricating oil to automobile drivers. The filling station consisted of an underground tank, pump, etc., and was installed by, and belonged to, the defendant, Gulf Refining Company, from whom the plaintiff bought all of his gasoline and oil, through Jones.
 

 On the occasion from which this lawsuit arose, an employé of Jones was delivering from a tank or drum on his truck, into the underground tank in front of plaintiff’s store, a quantity of gasoline which the plaintiff had ordered from Jones as agent of the defendant. The driver of the truck allowed a boy, 12 or 14 years of age, to ride with him and to assist hint in handling the rubber hose through which the gasoline was run into the underground tank. The driver was on the truck, attending to one end of the hose, and the boy was on .the ground, holding the other-end of the hose in a funnel in the intake of the underground tank. The gasoline having started flowing, the driver left the truck and was going into the store to have the plaintiff sign a receipt for the gasoline, when the boy struck a match to light a cigarette; and he set fire to the gasoline. The flames spread rapidly and destroyed the plaintiff’s store and stock of merchandise. A witness testified that the driver told the boy, when the driver had left the truck and was going into the store, “Don’t strike any matches.”. It is doubtful that the boy heard the admonition, and certain that he di4 not heed it.
 

 The plaintiff had no fire insurance on either the building or its contents. He sued for $8,000, claiming $1,750 for the value of the building, $5,000 for the value of the stock of merchandise, $750 for the loss of the book accounts, or accounts receivable, and $500 for the loss of profits; the plaintiff being put out of business for a month by the destruction of his store. The jury gave a verdict for the plaintiff for $2,000, and the court gave judgment accordingly. The defendant has appealed and the plaintiff, answering the appeal, prays that the judgment be increased to $6,700.
 

 The defendant contends that Jones, in delivering the oil to the plaintiff, was acting not as an employé of the company, but as an independent contractor, and that the company therefore is not responsible for negligence on the part of Jones, or of the driver of the ■truck, or of the irresponsible boy who was allowed to assist in delivering the gasoline. It is not necessary to decide whether the defendant would be liable, under the doctrine of respondeat superior, if the defendant were not engaged in a business that is essentially dangerous, or if the commodity which was being handled were not essentially dangerous. Gasoline is essentially a dangerous instrumental^ ty. It is a matter of no importance that the truck, by means of which the gasoline was delivered, belonged to Jones personally, and was operated at his own expense and for his own profit as well as for the benefit of the defendant. The important fact is that the gasoline," which was essentially dangerous to
 
 *78
 
 handle, belonged to the company until it was delivered to the plaintiff, and was being delivered by the person who had sold it as the agent of the company. The company was therefore responsible for the negligence of whomsoever the agent might have employed to deliver the oil; and it was negligence on the part of the driver of the truck to intrust the dangerous work to a boy only 12 or 14 years of age, and gross negligence on his part, of course, to strike a match near the flowing gasoline.
 

 The doctrine on which rests the defendant’s liability in this case is stated in 89 O. J. 1288, § 1483 (b), thus :
 

 ■ “An exception to the general rule, recognized in some jurisdictions, is that a master^ who intrusts the custody, control and use of any dangerous instrumentality or agency to a servant will not be permitted to avoid responsibility for injuries inflicted thereby through the act of the servant on the ground that the servant in doing the particular act complained of was acting outside of the scope of his employment. This is on the theory that persons using dangerous instrumentalities in the prosecution of their business must observe the greatest care in the custody and use thereof, that this duty cannot be shifted by the master from himself to his servants so as to exonerate him from liability from [for] their negligence in the custody and use thereof, and that, when these instrumentalities are so intrusted to a servant by the master, the proper custody and use thereof becomes a part of the servant’s employment ; and he must use the same degree of care and attention as the law requires of the master.”
 

 It is conceded by the defendant that Jones was the servant or agent of the company selling and delivering gasoline in Jonesville; but it is contended that Jones was working as an independent contractor in delivering gasoline outside of Jonesville, because he used his own trucks, at his own expense, and . employed whomsoever he saw fit to drive the trucks, and received as his compensation for the service 1 cent more per gallon than the commission allowed him for selling gasoline in Jonesville. The company could not, by dealing with Jones as an.independent contractor in-his deliveries of gasoline outside of Jones-ville, absolve itself from liability' for negligence on the part of the truck drivers employed by Jones to deliver the gasoline sold by Jones as the agent of the company. In support of that proposition — and in answer to the defendant’s argument that the truck driver went beyond the scope of his employment, and in fact disobeyed orders, when he permitted the boy to ride on the truck and assist in delivering the gasoline — and in answer to the argument that the boy’s striking a match near the flowing gasoline was not within the scope of his employment and was a wanton disobedience of the truck driver’s order — we quote from Pittsburgh, Cincinnati & St. Louis Railroad Co. v. Shields, 47 Ohio St. 393, 24 N. E. 659, 8 L. R. A. (Extra Annotated), 466, 21 Am. St. Rep. 480, viz.:
 

 “The inability of the master to shift the responsibility connected with the custody of dangerous instruments, employed in his business, from himself to his servants intrusted with their use, is analogous to, and may be said to rest upon, the same principle as that which disenables him from shifting to an independent contractor liability for negligence in the performance of work that necessarily tends to expose others to danger, unless the work is carefully guarded. It seems by the great weight of authority and reason that this cannot be done. See Ohio Southern R. Co. v. Morey, 47 Ohio St. 207 [24 N. E. 269] 7 L. R. A. 701, and cases there cited. Also see Lawrenee v. Shipman, 39 Conn. 586, 589; Cooley, Torts (2d Ed.) 644, 646.
 

 ■ “And the relation of master and servant and that of employer and independent contractor are, in this regard, treated in one view by Pollock in his work on Torts, as will
 
 *80
 
 appear from consulting his work at page 64.
 

 “It.is necessary in this and in all similar cases to distinguish between the departure of the servant from the employment of the master, and his departure from, or neglect of, a duty connected with that employment. A servant may depart from his employment without making his master liable for his negligence when outside the employment of the master; and he so departs whenever, he goes beyond the scope of his employment and engages in affairs of his own. But he cannot depart from the duty intrusted to him, when that duty regards the rights of others in respect to the employment of dangerous instruments by the master in the prosecution -of his business, without making the master liable for the consequences; for the first step in that direction is a breach of the duty intrusted to him by the master, and his negligence in this regard becomes at once the negligence of the master; otherwise the duty required of the master in respect to the custody of such instruments employed in his business may be shifted from the master to the servant, which cannot be done so as to exonerate the master from the consequences of a neglect of the duty.”
 

 The dangerous instrument referred to in the decision just quoted was one of the torpedoes used by railroad companies for giving warnings during times of fog, when other signals are useless. A torpedo embodies more of a hidden danger than a quantity of gasoline possesses; but the term “dangerous agency,” as used in the law on the subject, is only a relative term, as to which no definition can be suggested that would be applicable'alike to all cases. The handling of a large quantity of gasoline in a way that requires it to be sprayed or flowed in the open air is, essentially, a dangerous operation. In Stone v. Sinclair Refining Co., 225 Mich. 344, 196 N. W. 339, it was held:
 

 “The rule that a master who' intrusts the custody and control of any dangerous appliance or agency to the management of a servant will not be permitted to avoid responsibility for injuries inflicted thereby, on the plea that the servant in the particular act complained of was acting outside the scope of his employment, applies to intrusting driver of tank wagon with gasoline.”
 

 The principle was recognized by this court in Lanis v. Illinois Central Railroad Co., 140 La. 3, 72 So. 789, viz.:
 

 “Where the foreman of men engaged in pumping fuel oil from a tank car to the tender of a locomotive, holds a flaming torch over the open manhole of the receiving tank, in the performance of his duty of measuring or gauging the quantity of oil, and, when admonished by a workman under him not to use the torch, replies that the man is a coward and again passes the torch over the open manhole, causing an explosion and killing the workman who complained, .the employer is not exempt from liability for damages for the death, merely because the foreman indulged in greater, recklessness than was necessary for the performance of his duty.”
 

 Adverting again to the defense that the company’s agent, Jones, was an “independent contractor” when delivering gasoline outside of Jonesville, we quote from 39 C. J. pp. 1331-1333, § 1540, viz.:
 

 “A very important exception to the general rule exempting the eontractee from liability for injuries caused by the negligence of an independent contractor or his servants is ihat, where the work is dangerous of itself, or, as often termed, is ‘inherently’ or ‘intrinsically’ dangerous unless proper precautions are taken, liability cannot be evaded by employing an independent contractor to do it. * * *
 

 “This exception is based upon the unusual danger to third persons, which inheres in the mere performance of the work itself, aside from any negligence on the part of the con
 
 *82
 
 tractor or Ms servants, and the reason for the imposition of the liability is the duty of due consideration which one in a civilized community owes to his fellows and to the public, which duty precludes the ordering of that which if done will be inherently dangerous.”
 

 Our conclusion is that the judgment appealed from is correct. There is nothing in the record to justify an inference either that the amount allowed is too much or that it is not enough. The plaintiff’s allegation in regard to the loss of the book accounts or accounts receivable was so indefinite that the judge sustained the defendant’s objection to the introduction of evidence in support of it; and the plaintiff is not complaining of the ruling. The evidence on the subject of the loss of profits during the time when the plaintiff was out of business on account of the fire is also indefinite and doubtful. We assume from the evidence that the jury allowed $1,-200 for the loss of the building and $800 for the loss of the stock of merchandise; and, although those figures seem small, with regard to the stock of. merchandise, we defer to the judgment of the jury on the subject.
 

 The judgment is affirmed.
 

 THOMPSON, J., takes no part.