HARDY, Judge.
This is an action in which plaintiff, Louis P. Landry, seeks the recovery of damages resulting from personal injuries when he was struck on the head and body by a metal pipe which fell from a scaffold which was being used in the installation of awnings on a building. :
There are three sets of defendants'; the News-Star-World Publishing Corporation and its insurer, Employers Liability Assurance Corporation, Ltd.; Pearce Paint & Paper Company, a commercial partnership, the individual partners, Clifton G. Pearce, Clifton G. Pearce, Jr., James Larkan, Jr., and the insurer of the partnership, Globe Indemnity Company of New York; and Baham & Williamson Paint Contractors, a commercial partnership, the individual members thereof, Elmer R. Baham and L. Alton Williamson, and the insurer of the partnership, Employers Liability Assurance Company, Ltd.
After trial there was judgment in favor of plaintiff and against the Pearce Company, its individual .partners and its insurance carrier, Globe Indemnity Company, in solido, in the sum of $24,322.52, with a limitation of the liability of the insurer to $10,-000.00, the extent of its policy obligation. The judgment rejected the demands of plaintiff as against all other defendants. From this judgment plaintiff has appealed. Defendants, Pearce Company, the individual partners thereof, and its insurer answered the appeal, praying that the judgment against these defendants be reversed, or, in the alternative, reduced to a sum not in excess of $10,000.00.
Despite the voluminous record there is not a great deal of serious dispute with reference to the material facts involved, which we proceed to relate as briefly as may be possible.
The News-Star-World Publishing Corporation is the owner of a three-story brick building at Municipal No. 110 North Second Street, which location is in one of the principal business districts of the City, of Monroe, Ouachita Parish, Louisiana. Sometime prior to June 12, 1948, the corporation entered into a verbal contract with the Pearce Paint & Paper Company of Monroe, under which the latter engaged to repair and replace the awnings of the windows on the front of the building for a stipulated price. On or about Saturday, June 12, .1948, Pearce Company began the work of replacing the canvas awnings on the building in accordance with its contractual obligations. In the, course of this work, and as a preliminary to beginning actual operations, agents and employees of the Pearce Company rigged a scaffold or stage to be used *143 in the work above the first floor level, that is, the work of replacing the awnings over the windows on the second and third floors of the building in question. The stage consisted of a platform or floor board approximately eighteen inches in width -and some sixteen to eighteen feet in length. This platform was laid on metal stirrups, spaced in such manner as to span the required opening where the work was to be performed, one near either end of the platform, to which stirrups the platform was attached by means of u-bolts and ropes. At a height of approximately three feet above the platform, and on the back edge thereof away from the building a back bar or safety rail was affixed ‘by passing the same through two rings, one on each stirrup, in such manner that the ends of the bar extended about eighteen inches beyond the rings. The rings were fixed at the end of projecting steel arms welded to the stirrups at points above the actual edge of the platform. The rail or back bar, an iron pipe approximately two inches in diameter, was about the same length as the platform or floor board. A wire was passed through a hole near one end of the pipe and secured to the ring and arm of the stirrup at that end while at the other end the bar was secured only by means of a rope. As a further measure of security sash cord was wound about the pipe and' fastened to the stirrup rings and arms. We note that a safety rail or back bar of the character used in this case is required under the provisions of Act 264 of 1908. The stage was suspended from hooks on the cornice or edge of the roof of the building and was raised or lowered by means of ropes at either end passed through blocks and pulleys, which ropes reached from roof to sidewalk.
It appears that the work on the first floor windows was performed on Saturday, June 12th, in which work the stage was not used. On Monday, June 14th, the awnings were installed on the second floor windows, and in this operation the stage was employed. There was a cessation of work on Tuesday, June 15th, due to the fact that the employees of the Pearce Company were not familiar with work at this altitude, that is, at the third floor level. On the morning of Wednesday, June 16th, Mr. E. R. Baham, at the request of Mr. Pearce, undertook to assist in the installation work and actually installed the awnings on the north side window of the third floor. After this operation was completed it became necessary to move the stage to the center window on the third floor. The Pearce employees, including Baham, assisted in this' operation, which was accomplished by means of hand lines passed from the roof to the platform. On lifting the platform by means of these lines it was possible to slip the supporting hooks along the cornice or the edge of the roof approximately a foot at a time until the stage was brought into proper position.
The moving of the stage to the center window was completed, and Baham stepped out on the stage for the purpose of releasing the hand lines used in the moving operation before beginning work on the awning. While he was so engaged the back bar or safety rail in some inexplicable manner became loosened, and fell from its position to the sidewalk below, striking the unfortunate plaintiff, who was passing along the sidewalk en route to his place of -business some distance farther up the same street.
At the time of the accident, according to the estimates of witnesses, the platform had been in position for. a period of approximately eight minutes, and Baham, who testified that ■ he was- almost thrown from the platform by the falling of the bar, had been on the platform for only about half of this time, that is, some four minutes.
The* specific cause of the falling of the bar is not shown -but it appears that the end fastened with sash cord pulled out of the ring to which the cord was attached and the falling weight of the bar pulled loose and broke the sash cord and wire securing the other end, as well .as a rope which was tied from the middle of the back bar to the platform.
With respect to the pleadings involved there appears to be nothing requiring particular comment. A plea of vagueness was filed by defendants, which was sustained to the extent of ordering plaintiff to itemize certain expenses, with which action of the *144 court plaintiff complied. Exceptions of no cause of action on the part'of Baham and Williamson were sustained subject to the right of plaintiff to amend his petition, which was done. No point of objection is raised by any of the parties with respect to these matters of pleading.
Reference to plaintiff’s petition discloses specific allegations of negligence as against the several principal defendants, which we quote as follows:
By Pearce Paint and Paper Company, its partners, agents and employees, and Baham and Williamson Paint Contractors and its employees:
“(a) Failing to exercise proper caution in the handling of a dangerous instrumentality such as the pipe which struck petitioner; said pipe being about IS feet long and 2 inches in diameter. In this connection petitioner is informed, and, upon such information, avers that the pipe which struck him was being lifted by ropes attached to pulleys; that said pipe was insecurely fastened to these ropes and that the ropes and pulleys were so arranged that there was nothing to prevent the pipe from becoming unbalanced, slipping out of the ropes and falling to the sidewalk below.
“(b) Failing to place a barricade which would prevent pedestrians from walking along the sidewalk in a place where there was danger of their being struck by falling objects used in connection with the installation of awnings on buildings of News-Star-World Publishing Corporation.
“(d) Failing to place signs warning the public of the fact that work was being conducted above the sidewalk- which made it hazardous for pedestrians to proceed along the sidewalk in front of the building of News-Star-World Publishing Corporation.
“(d) Failing to place beneath the work being done, some, net, stand or anything of similar nature to catch any object which might fall from above so that same could not cause injury to any pedestrian.”
By News-Star-World Publishing Corporation in addition to its alleged responsibility for acts done by Pearce Paint and Paper Company:
“(a) Failing to place a 'barricade along the sidewalk in front of its building so that pedestrians would not 'be exposed to the hazards involved in the inherently dangerous work of installing awnings on its building when its officers, agents and employees knew or should have known that such barricade had not been constructed.
“(b) Failing to prevent Pearce Paint and Paper Company from undertaking the. installation of awnings on the building until such time as barricades, warning signs, or other protective devices had been erected.
“(c) Failing itself to install barricades and/or warning signs upon the failure of Pearce Paint and Paper Company to erect such barriers and signs.
“(d) Failing generally to do the things necessary to protect and warn the public against the hazards of the dangerous work being done on its building.”
In the alternative plaintiff alleged that “the dangerous instrumentality inflicting the injury to him was under the direct control of defendants, their agents and employees, and, had they used proper care, the accident would have been avoided”. As a consequence plaintiff invoked the doctrine of res ipsa loquitur.
The respective defendants, in addition to specific denials of each and every charge of negligence under the averments of plaintiff’s petition, alleged contributory negligence on .the part of plaintiff.
In oral argument and brief before this Court counsel for plaintiff urges liability on the part of the Pearce Company and its partners under the res ipsa loquitur doctrine. It is further urged that the Baham Company and its partners are liable as employees of the Pearce Company, who were charged with the particular responsibility of handling the stage in the course of installation of awnings at the third story level, and the same doctrine is invoked against these defendants. With respect to the Pub- ' lishing Corporation, proceeding upon the assumption that the Pearce Company was its independent contractor, it is contended that this defendant was under a direct responsibility as the owner of the building to *145 undertake and carry through precautions for the purpose of protecting the general public against danger. In support of this position it is urged that work directly over a public sidewalk involving heavy materials is inherently dangerous and the failure of the owner of the building to take proper precautions constitutes negligence.
We proceed to a discussion of the points of law involved in the various charges above noted, first disposing of those which may be determined on the basis of facts alone.
We find no support under the facts which would sustain defendant’s plea of contributory negligence. It is true that the work had been in process for several days and even when operations were suspended the stage or platform continued to hang against the face of the building over the sidewalk. Conceding that plaintiff could and should have perceived the operations, and even the possible danger, we do not find that there is any reasonable support for the argument that he was obliged to refrain from using the sidewalk, and, as a consequence, that his failure so to do constituted negligence.
As to the liability qf the Baham firm and its partners, counsel for plaintiff concedes that the relationship between Pearce Company and the Baham partnership was that of employer-employee and argues that Ba-ham was charged with the particular responsibility of handling the stage in the installation of awnings at the third floor level, and further was actually on the stage at the time of the falling of the pipe. From this the conclusion. is drawn that these defendants are also liable for plaintiff’s injuries and that the doctrine of res ipsa loquitur applies to the Baham defendants.
As pointed out by the learned Judge of the District Court in his comprehensive and excellently written reasons for judgment, there is nothing in the facts adduced to indicate that Baham committed any act of misfeasance, and, being an employee, the employer must stand in his place ■under the provisions of Articles 2317 and 2320 of the Civil Code of Louisiana. With these stateménts of fact and the conclusion reached we are in complete accord. 1 As to the application of the doctrine of res ipsa loquitur we find nothing which would indicate that the Baham firm or its members had complete control of the instrumentality which caused the accident. On the contrary it is clearly established that Baham’s firm was subject to the directions of the Pearce Company, had taken no part in the construction or rigging of the stage, and there is no showing, even by the remotest implication that they were guilty of any negligence whatsoever. It follows that plaintiff’s claims against Baham & Williamson, the partners and the insurer, are without merit.
In view of the indisputable fact that Pearce Company was an independent contractor of the Publishing Corporation, plaintiff’s only hope of fixing liability upon the said corporation must rest upon the establishment, under the facts in the case, that there was a direct responsibility -upon the owner of the building; that they failed to carry out the responsibility, and that damage was incurred by a third person as a proximate result of their negligent act or acts.
We find no impelling necessity for a long and involved discussion of general legal principles and authorities in support thereof. Counsel for all parties have been most diligent in presenting every phase of this question, for which they indeed deserve the heartfelt thanks of the Court. Nevertheless, it is our opinion that all of the principles and all of the authorities must be considered in the light of the facts developed on trial.
As to the Pearce Company, plaintiff has properly invoked the doctrine of • res ipsa loquitur and has fulfilled all ■ requirements in laying the, foundation therefor. The established facts logically and convincingly lead to the conclusion that, the pipe which constituted the safety rail:of the stage would not have fallen except for some negligent act of omission • or commission chargeable • to the defendant, Pearce Company, its agents or employees, for whose actions it would be liable. Under this circumstance the burden of proof shifted to *146 the said defendant to exculpate itself from any imputation or conclusion of negligence, and this burden it has failed to discharge. It is certain that the pipe would not have fallen if it had been securely and properly attached to the stage. Since the stage was assembled and rigged by employees of the Pearce Company, the failure to properly secure the pipe definitely constitutes a negligent act of omission. This conclusion is borne out and substantiated beyond question by the vast preponderance of the testimony on this point. Although it was established, as we have noted above in our statement of facts, that one end of the pipe was properly secured not by ropes alone but by wire passed through a hole in the pipe and attached to the -ring and arm of the stirrup, it is further shown that the other end of the pipe was attached only by the use of a rope fixed thereto by a half hitch. The only logical recapitulation of the sequence of events which will ¡bear examination is that in moving the stage the rope which held the bar at one end became loosened to such an extent that the weight and movements of Baham caused the pipe to slip out of the rope; the weight of the unsecured end dropping free pulled loose or broke both the center rope and the wire and rope at the opposite end. Had the pipe been securely fastened at both ends it could not have fallen. Perforce it follows that the agency responsible for this omission must be held answerable for its carelessness, negligence and the consequent results therefrom.
 Proceeding to plaintiff’s claims as against the Publishing Corporation, we first note that plaintiff’s effort to invoke the doctrine of res ipsa loquitur against the named defendant must fail. One of the requisites of the application of the doctrine is that the instrumentality which caused the injury must be shown to have been under the complete and exclusive control of the defendant charged.. Lockwood v. Kennedy, La.App., 44 So.2d 176; Ross v. Tynes et al., La.App., 14 So.2d 80; Gerald v. Standard Oil Co. of Louisiana, Inc., 204 La. 690, 16 So.2d 233; Welcek v. Saenger Theaters Corp., Inc., La.App., 5 So.2d 577. In the instant case it could not be, and indeed it is not now contended, that this element was established. On the contrary, it is established without contradiction that the Publishing Corporation had no control of any nature or character over the stage which was the instrumentality causing the injury.
Adverting to the specific allegations of negligence as against the Publishing Corporation, which we have set forth above in full, it is to fee observed that plaintiff relies upon the claim that the said defendant failed to place barricades or signs or other warnings or protective devices; further failed to require these precautions to be taken by its contractor, the Pearce Company, and generally failed to do whatever was necessary to protect and warn the public against the hazards of the dangerous work which was in the course of performance.
In brief, distinguished counsel for plaintiff concedes the general principle that a contractee is exempt from liability for the negligent acts of the independent contractor. But counsel zealously urges that this general principle is not absolute and does not release the owner from his own faults or negligent acts of omission or commission. Unquestionably this conclusion is perfectly sound and is well established, but it is requisite that the established facts substantiate the conclusion of liability under such exceptions.
In the first place we observe that it was necessary to show that the work being done was dangerous. In this plaintiff has failed, and, conversely, the record amply justifies the conclusion that the actual work was not dangerous. There could 'be nothing dangerous in the replacement of canvas awnings, and it was established that the only tools used in the operation were a screw driver and a pair' of pliers, which were carefully handed out of each window to the workmen on the stage as and when required. It is quite unnecessary to go into any greater detail along this line since the accident itself was not the result of any work, but occurred by reason of a defect in the platform itself, an appurtenance or instrumentality with which the defendant *147 Publishing Corporation had not-the slightest relation or connection.
Plaintiff’s claims of negligence on the part of defendant Publishing Corporation for failure to place barricades and signs or other warning devices in lieu of the taking of such precautionary measures by its contractor are untenable. The testimony of a number of witnesses establishes the fact that employees of the Pearce Company, during the course of work on the upper floors, were accustomed to station themselves on the sidewalk below the area occupied by the stage for the specific purpose of warning passing pedestrians. It is true that at the time of the accident there were no employees on the sidewalk for the performance of this duty. But the significant fact in this connection is that the stage had just been moved, had been in place only for a few minutes and, actually, there was no work in progress, the only activity on the stage being that of Baham, who was releasing the hand lines. The employees who had been engaged in the operation of moving the stage had left the upper floor and were on their way back to the sidewalk. During this brief interim the a-ccident occurred.
The precaution taken and the method used 'by the Pearce Company was certainly reasonable, and the unfortunate coincidence of the falling of the safety rail during this time cannot be considered significant or conclusive as to the establishment of negligence, particularly against the Publishing Corporation.
Additionally, we are aware-of the testimony by witnesses, including one tendered on behalf of plaintiff, that it was not the custom to establish barricades or display warning signs beneath stages which are being used in work upon the exterior of buildings. In the opinion of this Court in Anderson v. London Guarantee & Accident Co., Ltd., 36 So.2d 741, 747, certiorari refused, we quoted a number of authorities with respect to negligence, in the course of which we noted the following quotation: “ ‘The common usage of a business or occupation is frequently stated to be a test of care or negligence, and accordingly, conformity to custom or usage is very generally regarded as a matter proper for consideration in determining whether or not sufficient care has been exercised in a particular case, * * 45 Corpus Juris 706,”
Since it was established that it is not the custom to take the precautions urged by counsel for plaintiff as being essential, it obviously follows that the lack of these precautions cannot be adopted as inducing a conclusion of negligence. There are a number of operations performed on the outside walls of buildings, such as the replacement of awnings, painting, window washing, the cleaning of facings, etc., and in themselves these operations do not involve a danger to the general public which is inherent in the nature of the work itself. We are impressed with the fact that in the instant case the work had no direct connection with plaintiff’s injury, and, certainly, the work which had been contracted could not be regarded as inherently or intrinsically dangerous.
Learned counsel for plaintiff strenuously argues that the act of omission in failing to place signs or warnings was a contributing cause to the injury to plaintiff “for had such sign or a barricade been placed on the sidewalk plaintiff would have not been injured”. With due respect the conclusion reached appears to us to be a non sequitur since it is evident that it was not the failure to place signs or barricades, nor indeed was it the work itself, but it was an unforeseen and unforeseeable circumstance which brought about plaintiff’s injury.
We quite agree with the argument on behalf of plaintiff that the general principle exempting a contractee from liability is subject to the exception in the case of inherent or intrinsically dangerous work, which principle was enforced by our Supreme Court in Montgomery v. Gulf Refining Co., 168 La. 73, 121 So. 578.
The burden of counsel’s argument is expressed in his observation: “Certainly work directly over a public sidewalk with heavy materials is inherently dangerous; and certainly proper precautions were not taken.”
This observation has no applicability under the facts of the instant case, which facts we have above noted.
*148 We have carefully considered a number of Louisiana cases which bear, in greater or less degree, upon the points at issue. The Montgomery case, supra, involved the transportation of gasoline, certainly a work which can only be considered as inherently dangerous and therefore necessitating unusual precautions. Jackson v. Schmidt, 14 La.Ann. 806, involved the demolition of a wall; Rock v. American Const. Co., 120 La. 831, 45 So. 741, 14 L.R.A., N.S., 653, under the facts of which it was shown that the plaintiff was injured by an excavation in the sidewalk. The principles applied to the operations considered in the above cases have no applicability to the facts involved in the instant case, for in each one the actual work was the cause of injury.
More appropriate to the consideration of the questions before us is the principle enunciated in the case of Beck v. Dubach Lumber Co., 171 La. 423, 131 So. 196, 198, as follows: “The doctrine on which liability was predicated in the Montgomery Case could not be made to apply to the facts of the present case. The instrumentalities employed by the contractors Jeffus and Woods in cutting and removing the timber from plaintiff’s land were not ‘inherently’ and ‘intrinsically’ dangerous within the meaning of the rule on which the Gulf Refining Company was held liable.”
To the same effect is the quotation from 39 Corpus Juris, Section 1535, which was adopted by Judge Taliaferro in his opinion in Marbury et al. v. Louisiana Highway Commission, La.App., 153 So. 590, 593: “Where the act which causes the injury is one which the contractor was employed to do and the injury results, not from the manner of doing the work but from the doing of it at all, the employer is liable for the acts of his independent contractor. If the contractor does the thing which he is employed to do, the employer is responsible for that thing, as if he did it himself. However, where the injury does not necessarily result from the work, the contractee is not liable under this exception.” (Emphasis by the Court.)
This Court had further occasion to enunciate the principle here involved in Riche et al. v. Thompson, 6 So.2d 566, 569, as follows: “The owner of a building is not the insurer against injury of all who might pass or enter. He is required only to exercise ordinary and reasonable care for their protection. Bartell v. Serio, La.App., 180 So. 460, 461; and many cases cited therein from this and other jurisdictions.”
In continuing the opinion in the above cited case the Court made reference to still another principle which is apropros here: “The Supreme Court of this State in New Orleans & N.E.R. Company v. McEwen & Murray, 49 La.Ann. 1184, 22 So. 675, 680, 38 L.R.A. 134, said: ‘Negligence consists in a failure to provide against the ordinary occurrences of life, and the fact that the provision made is insufficient as against an event such as may happen once in a lifetime, or perhaps twice in a century, does not * * * make out a case of negligence upon which an action in damages will lie.’”
Our learned brethren of the Orleans Court had occasion to consider a case involving facts and the application of principles of law somewhat similar to the matter before us in DeCuers v. Crane Co. et al., 40 So.2d 61, 68. We quote from the Court as follows:
“We next consider the contention of plaintiff that the Holmes Company was at fault and that, therefore, it and its liability insurance carrier should be held liable. We note from the petition that it is not charged that the Holmes Company is liable because of its ownership of the adjacent premises. The only charges are directed at the negligence of that company and the other defendants in failing to provide a proper passageway, and in connection with the stacking and chocking of the pipe. As a matter of fact, under the firmly established jurisprudence of this state, no liability based on the ownership of the adjacent premises could be charged to the Holmes Company, and it could not be held responsible without evidence showing that the falling of the pipe was the result of its negligence. Far from showing this, the record establishes the fact that the Holmes Company had nothing whatever to do with the stacking of the pipe and was in no way involved or concerned with its presence on the sidewalk, *149 except that the pipe was to be used in the carrying out of the contract by the Glover Company and its subcontractors. The Glover Company was an independent contractor and over its work the Holmes Company had no control. Its only right was to see that the contract was carried out in accordance with its terms, but it could not interfere in any way with the conduct or progress of the work.
“It is well settled that where a contractor undertakes to do work for an owner under a contract which provides that the owner shall furnish the plans and specifications and that his only right shall be to insist that the job be done in accordance with those plans and specifications, the contractor does not become the agent or employee of the owner. Therefore, the owner is not liable to third persons who may be injured through fault of the contractor or his employees. Robideaux v. Herbert, 118 La. 1089, 43 So. 887, 12 L.R.A., N.S., 632; Crysel v. Gifford-Hill & Co., La.App., 158 So. 264; West Bros. v. Pierson, La.App., 2 So.2d 71. This rule is applicable as well where a cost plus contract is involved as where the contract provides for a fixed compensation. Standard Oil Co. v. Fontenot, 198 La. 644, 4 So.2d 634; Underwood Contracting Corp. v. Davies, 5 Cir., 287 F. 776.
“The mere fact that, because of the operations of the contractor or subcontractor, a dangerous situation was created on the sidewalk alongside the place of business of the Holmes Company did not make that company liable for an accident which might result. McCormack v. Robin, 126 La. 594, 52 So. 779, 139 Am.St.Rep. 549; Henrichs v. New Orleans Public Service, Inc., et al., La.App., 192 So. 383.”
In Todaro v. City of Shreveport et al., 187 La. 68, 174 So. 111, the plaintiff, while standing on a sidewalk, was injured by the falling of a canopy or shed fastened to the wall of a building owned by the defendant municipality which was being demolished by an independent contractor. The charge of negligence leveled against the City of Shreveport was based upon its failure to provide barricades or warning signs which had not been established by the contractor. The Supreme Court denied recovery and predicated its conclusion upon the fact, inter alia, that the defect which caused the fall of the canopy was not apparent and that the City,'not being an insurer of the safety of pedestrians, was not chargeable with negligence for failure to take precautions against a: nonapparent danger.
It appears to us that the identical principle is applicable here. The defect which caused the fall of the safety rail was certainly not apparent, and the conclusion is therefore inescapable, under the holding in the Todaro case, that liability does not attach to the principal.
We have carefully considered with deep interest the citations of authority on the part of counsel for all parties from other jurisdictions and find, as might well be expected, a division of opinion. We refrain from adverting to any discussion of these cases since it is our definite conclusion that the principles established by our own courts, in the cases noted, conclusively dispose of the issues involved.
Plaintiff’s injuries did not result from the performance of the work which the Publishing Corporation had contracted to the Pearce Company. The only hope of recovery by this plaintiff against the Publishing Corporation would be upon the basis of a showing that the work itself was inherently or intrinsically dangerous and that the owner, cognizant of this fact, failed in requiring its contractor to take precautions, or, in the event of his failure, to provide the necessary safeguards itself. The sine qua non is therefore the inherent danger of the work, which in this instance has not been established, and it follows that plaintiff’s demands against this defendant were properly rejected.
There remains for consideration only the quantum of damages. Plaintiff’s petition itemized his damage's as follows:
Permanent physical disability resulting in inability to continue his business with consequent loss of earning capacity $328,000.00
Medical, hospital, nursing, and related expenses incurred or will be incurred 25,000.00
Physical pain and suffering 20,000.00
*150 Unquestionably plaintiff was seriously and most painfully injured. The blow on the head resulted in a compound com-minuted fracture of the skull in the right parietal region and through the opening in the skull the brain tissue herniated, necessitating surgical removal of pieces of bone, ligature of blood vessels, suturing of the dura, grafting of bone, etc. Additionally, plaintiff sustained severe injuries to his right leg, which also necessitated surgical procedure, a perivertical sympathec-tomy block, followed by a lumbar sympa-thectomy.
As was observed by the District Judge no amount of money could compensate plaintiff for the injuries suffered.
The differences in the findings of the medical experts for plaintiff and defendants are of , minor importance except with respect to the degree of disability. Unquestionably, plaintiff will experience some substantial degree of disability and there will be a persistence of pain at intervals and the need for additional medical attention, but perhaps some general improvement. The following observation from the opinion of the learned District Judge is pertinent: “Consideration of Mr. Landry’s condition reflects certain factors on the bright side. Mentally he is alert and at least for an interval he can astutely handle any business matter brought to his attention. Time has apparently improved his condition to some extent.”
At the time of the accident the plaintiff, a man of 56 years, was President of the Twin City Motor Company, Inc., of Monroe. The business was a family corporation and plaintiff individually owned, and still owns, so far as the record discloses, 120 of the 150 shares of its capital stock. While it is true that plaintiff has suffered a decrease in salary since the accident, it appears that the major portion of his income, as far as the business is concerned, has been, and will continue' to be, derived from bonus payments based upon corporate earnings. • It follows that the reduction of his salary will result in an increase to that extent in the surplus or net profits of the corporation, which saving will largely benefit plaintiff, the owner of four-fifths of the stock. The record does not reflect any loss to the company directly attributable to Mr. Landry’s injury, and since he is in condition at least to give the benefit of his experience and advice, it is questionable if the business will suffer.
As was observed by the District Judge courts properly consider the financial ability or responsibility of defendants in connection with the assessment of damages. Like plaintiff’s motor company, the defendant, Pearce Company, is a family organization and its insurance is limited to the sum of $10,000.00.
The itemized statement of the allowance of damages was set forth by the District Judge as follows:
“(1) $10,000.00 for personal injuries and loss of earning power,
“(2) $5,000.00 for pain and suffering, and
“(3) $9,322.52 for medical, nursing and hospital.”
The sum allowed for expenses incurred was computed on the basis of statements of charges made to and paid by the plaintiff. While it is true plaintiff’s testimony-with respect to some of these expenditures is an approximation based on his own conclusions, we are not prepared to say that they are unreasonable.
Under the circumstances, and taking into consideration all the elements involved, we do not feel that the facts would support an increase in the amount awarded by the District Judge.
For the reasons assigned the judgment appealed from is affirmed in all respects at appellant’s cost.