The **PURE OIL COMPANY,**
Appellant,

v.

**J. M. LASSING, Individually and for the use and benefit of Jersey Insurance Co., Appellee.**

No. 12290.

United States Court of Appeals
Sixth Circuit.

June 7, 1955.

W. D. Deakins, Jr., Chicago, Ill., George H. Armistead, Jr., Nashville, Tenn., W. F. Wimberly, Atlanta, Ga., Ben A. Harper, Chicago, Ill., on brief, for appellant.

Z. T. Osborn, Jr., Nashville, Tenn., Robert L. Alexander, Nashville, Tenn., on brief, for appellee.

Before SIMONS, Chief Judge, and McALLISTER and STEWART, Circuit Judges.

STEWART, Circuit Judge.

Appellee, J. M. Lassing, owned property outside Nashville, Tennessee, on which was located a service station. He leased it to appellant, The Pure Oil Company, hereinafter called "Pure." Pure, in turn, leased the property to L. A. Tipton, who operated the station, handling and dispensing gasoline, oil, and other products of Pure. Pure's products were distributed to Tipton and others in the Nashville area by Seigle White. White operated under a written agreement with Pure. By the terms of this agreement, White paid all license fees and taxes in connection with his distributorship business; he furnished his own trucks and tank wagons; he hired and paid his own employees, and exercised complete control over the manner and method in which they performed their work for him. White received commissions from Pure based upon the quantity of each of its products he sold within his area of operations.

Thé gasoline pumps at the Tipton service station belonged to Pure, but it was Tipton's obligation under his lease with Pure to keep them in good order and repair.

On December 6, 1946, one of the gasoline pumps got out of order, and Tipton called Seigle White's Pure distributorship office to request help in repairing it. White's plant manager accordingly dispatched two of White's employees to repair the pump. While they were working on the pump at the Tipton station, one of White's tank trucks, driven by another employee of White, arrived at the station to deliver gasoline to the station's underground tanks.

The evidence most favorable to appellee tended to show that while this gasoline was being delivered through a fill pipe in the service station driveway, one of the men who was repairing the pump lit a cigarette and threw a burning match into the fill pipe. The ensuing fire destroyed the filling station.

This appeal followed a judgment entered upon a jury verdict against Pure in Lassing's suit for damages to his property, the court having denied Pure's motions for a directed verdict and for judgment notwithstanding the verdict.

In denying Pure's motion for a directed verdict, the trial court concluded that while the evidence disclosed White to be an independent contractor, which under the general rule would insulate Pure from liability for the negligence of White's employees, yet, "the particular facts and circumstances, which included the handling of a dangerous article without any precautions being taken to prevent accidents such as did happen, takes the case out from under the general rule, and is to be considered one of the exceptions to the rule as stated by the Supreme Court of Tennessee in the case of McHarge v. [M. M.] Newcomer [& Co.]. * * *" [117 Tenn. 595, 100 S.W. 700, 9 L.R.A.,N.S., 298 (1907) ].

■ The court instructed the jury accordingly, telling them that "gasoline, if not properly safeguarded, is one of the most dangerous and lethal agencies known to man."

We think the trial court was correct in concluding that White was an independent contractor and not Pure's agent in distributing Pure's products in the Nashville area, and specifically in delivering Pure's gasoline to Tipton. Pure neither exercised nor had the right to exercise any control over the manner or method of White's performance of the work. That is the primary test in Tennessee as elsewhere. Conasauga River Lumber Company v. Wade, 6 Cir., 1955, 221 F.2d 312; Terry v. Memphis Stone and Gravel Company, 6 Cir., 1955, 222 F.2d 652; D. M. Rose & Co. v. Snyder, 1947, 185 Tenn. 499, 514, 206 S.W.2d 897, 904.

■ However, there was in any event no evidence of negligence on the part of White's employee in delivering the gasoline. It was the negligence of the employee who was repairing the pump that caused the damage. And in sending men to repair the pump, White was neither

agent nor independent contractor for Pure. That work was being done for Tipton. It clearly was Tipton's contractual duty to keep the pump repaired, and it was at his request and for his use and benefit that the pump was being repaired by White's employee, whether as agent, independent contractor, or mere volunteer we need not decide. That being so, the negligence of White's workman while performing this work for Tipton could impose no liability upon Pure, even though White also acted as Pure's independent contractor in performing work for Pure in distributing gasoline to Tipton and others in Nashville.

What we have said makes unnecessary a decision of whether the trial court was correct in concluding that the delivery of gasoline is so inherently dangerous an operation as to make the duty of ordinary care a non-delegable one in Tennessee under the rule of McHarge v. M. M. Newcomer & Co., 1907, 117 Tenn. 595, 100 S.W. 700, 9 L.R.A.,N.S., 298. Compare Montgomery v. Gulf Refining Co., 1929, 168 La. 73, 121 So. 578, with Joseph R. Foard Co. of Baltimore City v. State of Maryland, 4 Cir., 1914, 219 F. 827. Nor need we decide whether the negligence of the employee in lighting a match in the proximity of gasoline was so unrelated to the work he was sent to perform as to render his principal immune from liability under Tennessee law. Cf. Shuck v. Carney, 1937, 22 Tenn.App. 125, 118 S.W.2d 896, certiorari denied by Tennessee Supreme Court; Kelly v. Louisiana Oil Refining Co., 1934, 167 Tenn. 101, 66 S.W.2d 997. Neither Tipton nor White was a party to this law suit.

Because in repairing the pump neither White nor his negligent employee was performing any work for Pure, as agent, independent contractor, or otherwise, Pure's motion for a directed verdict should have been granted. The judgment is set aside, and the case remanded to the district court with instructions to dismiss the complaint.