REGAN, Judge.
Plaintiffs, Pearl Assurance Company, Ltd., Fire Association of Philadelphia and General Insurance Company of America, subrogee real and personal property insurers of Ralph K. Rothrock, instituted this suit against the defendants, James W. Reily, Rothrock’s lessee and his liability insurer, American Employers Insurance Company, and Robert V. Corkern, conducting his business under the trade name of Cork-ern Refrigeration Service, and his liability insurer, New Amsterdam Casualty Company, endeavoring to recover $30,406.64, representing the amount of money paid by plaintiffs to Rothrock to reimburse him for real and personal property destroyed by a fire in his premises, designated as 5316-18 Dryades Street. Plaintiffs assert the fire occurred as the result of a defective motor in Reily’s refrigerator, and rely on the doctrine of res ipsa loquitur. Alternatively, they insist that the negligence of Reily in maintaining or of Corkern in repairing the refrigerator caused the fire or that the negligence of both concurred in producing the hazardous condition that caused the conflagration.
All of the defendants pleaded the exceptions of no right or cause of action, which were overruled. Defendants Corkern and his insurer, New Amsterdam Casualty Company, then answered through the medium of a general denial. Defendants Reily and his insurer answered denying the existence of any negligence, and in the alternative pleaded Rothrock’s contributory negligence as a bar to plaintiffs’ recovery.
From a judgment in favor of the defendants dismissing plaintiffs’ suit, they have prosecuted this appeal.
In their pleadings the defendants raised various claims and defenses among themselves. Suffice it to say that we find it unnecessary to discuss this phase of the case in view of the result that we have decided should be reached herein.
The record reveals the fire was discovered by Rothrock at 7 a. m. on May 9, 1953. He related that he noticed smoke emanating from the eaves of the roof in the rear of his home and notified the fire department. The fire was extinguished at about 8:30 a. m. Rothrock examined the upper apartment immediately thereafter and noticed that the effects thereof were most heavily concentrated in the kitchen area of the upper apartment, which, at that time, was leased to the Reilys. In the kitchen the most severely burned area was the wall to the rear of a 1937 cork-constructed Kel-vinator refrigerator; a hole was also burned through the floor to the supporting joists under the refrigerator. This appliance was totally destroyed by the flames.
Two other appliances were also located in that kitchen, a gas stove and an electric dishwasher. Over the stove was installed a ventilating fan, designed to remove cooking odors from the kitchen. Rothrock said that prior to the fire the Reilys’ refrigerator vibrated constantly and could be heard in his apartment below. This last statement was corroborated by his wife.
The Reilys were not in New Orleans when the fire occurred. They both denied that the refrigerator operated noisily or vibrated. In any event, within ten days before the fire, Corkern’s employees serviced the refrigerator three times in order to repair and adjust the thermostat thereof. The first servicing revealed that the temperature was too high, and the latter two, that it was too low. However, the final visit was made on May 7th, which was two days before the fire, and the box thereafter appeared to function normally.
The remainder of the testimony inscribed in the record was offered on behalf of plaintiffs and defendants by refrigeration and electrical experts and investigators, to either prove or disprove that the fire originated in the refrigerator’s motor.
James M. Shilstone, a representative of Shilstone Testing Laboratory, engaged by the plaintiffs to determine the origin of the fire, related that he examined the premises eleven days after the fire and caused photo *268 graphs to be made of the damage. It was his opinion that the fire originated in the kitchen since the area near the refrigerator was most heavily damaged.
William E. Cooke, chief inspector and surveyor for Shilstone, accompanied James Shilstone to the scene. He also observed that the most heavily damaged area of the apartment was in the vicinity of the refrigerator. Cooke inspected the dishwasher and thereafter ruled this appliance out as a possible cause of the fire since the rubber hose near the wiring was not burned. The gas stove, similarly, was not the source, reasoned Cooke, because the burned damage appeared primarily on the exterior thereof. Cooke related he did not examine the refrigerator since his laboratory had engaged Earl Jennings, a refrigeration expert, to make the inspection.
Cecil M. Shilstone, á partner in Shilstone Testing Laboratories who ultimately compiled the report rendered to the plaintiffs’ agent, described the condition of the kitchen when he inspected the burned apartment. The heaviest concentration of damage to the walls and the floor of the kitchen was in the area occupied by the refrigerator. An electrical fixture in the kitchen ceiling was completely burned out. He repeated that there was a hole in the floor beneath the refrigerator; relative to the condition of the appliances, Shilstone said the dishwasher was scorched and charred only externally, while the refrigerator had been totally consumed by the fire, except for the metal parts contained therein. In describing the construction of the refrigerator he asserted that it was built with the compressor unit on the bottom, which rested on a steel plate approximately nine inches from the floor; to the rear thereof was a fan which drew in air to cool it; the air sucked in by the fan was directed toward the floor. Shilstone then expressed this opinion:
“This investigation conclusively indicates the fire * * * originated in the kitchen and was caused by the compressor assembly unit of the electric refrigerator.”
He cited several factors upon which this conclusion was predicated. First, the hole in the floor under the refrigerator indicated that the fire burned there with the most intensity and second, the electrical connections to the motor were completely burned. He discounted both the dishwasher and the stove as causes of the fire because of the lack of internal damage to both units. Similarly, he did not consider the burned out ceiling fixture as a cause because he explained that fire burned up and not down.
Shilstone’s positive testimony was weakened considerably on cross examination when it was disclosed that he originally employed Earl Jennings, a refrigeration expert, to examine the refrigerator for the purpose of determining whether the motor caused the fire. Despite this expert’s report to Shilstone to the effect the refrigerator did not cause the fire, Shilstone disregarded the report. He emphasized that he had hired the expert because no one in his organization was as eminently qualified to evaluate the condition of this appliance; however he later ignored the report rendered by Jennings and pinpointed the refrigerator’s motor as the cause of the fire without first consulting and securing the opinion of another refrigeration expert. Shilstone asserted that after engaging Jennings he later concluded the man was incompetent. To cite an example of Jennings’ lack of understanding of the problems, Shilstone explained that Jennings ruled out the refrigerator because the solder in the armature of the compressor’s motor was not melted, which would indicate the fire did not originate from the internal portion of the motor. Shilstone said he later learned the motor in question had no part properly termed an armature. At this point it should be pointed out that all other refrigeration experts who testified identified the part referred to by Jennings as an armature or a rotor, both being terms that may be used interchangeably. Shilstone insisted that the part was a rotor, not an armature.
To further pinpoint the origin of the fire within the motor, plaintiffs called A. L. *269 Landers, an expert on electrical motors who had been associated'with Westinghouse and United States Steel Company, and who presently operates his own- business as an electrical and mechanical consultant. He testified that he had examined the motor and was of the opinion that the fire had started therein, which in turn spread and caused the damages.which form the subject matter of this litigation. This conclusion was predicated on his assertion that both the internal as well as the external wires of the motor were burned to the same extent. Landers related that it is possible for a motor to burn from the inside and to create a blaze immediately outside the motor. He stated he has worked with and examined many burned motors, however his experience with burned refrigerator motors was only attained from incidents which occurred in his home. He then laboriously explained that within a period of approximately 21 years, three motors contained in various refrigerators he had owned burned, one caused by a defective cut-off fuse, a second by his endeavor to intentionally short-circuit his refrigerator so as to cause ice cubes to freeze faster, and the third burned from a cause he could not explain since he was not at home when the incident occurred. However, he carefully pointed out that in all three instances, there were no flames produced on the outside of the motors by the internal burning, but the wires located therein were merely destroyed.
Defendant, Robert V. Corkern, who is engaged in his own business, was qualified as a refrigeration expert, based on more than 25 yea2-s experience as a repairman. He testified that he examined the motor of the refrigerator and it was impossible to determine if the damage thereto occurred as the result of an internal or an external blaze. He emphasized that he had never seen an internally caused motor fire create an outside flame. To rebut Landers’ assertion that the damage to the interior wires could not be caused by an outside blaze, Corkern conducted an experiment wherein, after running a motor for two hours, he poured kerosene over it and the sawdust upon which it had been placed. He then ignited the sawdust. The motor continued running for about 20 minutes; thereafter, the motor stopped and the damage to its interior, Corkern pointed out, was similar to that caused in the refrigerator’s motor. Corkern thus concluded by asserting that the possibility could not be discounted that the fire originated in the ceiling, dropped behind the refrigerator and was sucked inward by the compressor fan, which directed it toward the area where the floor was burned.
Corkern further confirmed the fact that the term armature and rotor are both used to describe the same part of the motor.
Plaintiffs’ charge of fault on the part of Corkern is based upon the hypothesis that in servicing the refrigerator prior to the fire, Corkern’s employees in some manner created a hazard within the unit. He denied this, as did the repairmen, who had actually performed the work. It is unnecessary to summarize their testimony in view of the conclusion we have decided should be reached herein.
The defendants called J. E. Jennings as a refrigeration expert, who stated he made the following report to Shilstone:
“As you know the refrigerator was burnt pretty bad, but from what we could see would say that the fire * * was not caused by the above mentioned refrigerator.”
Jennings, an associate of C and D Jennings Company since 1935, an organization engaged in the repair and maintenance of refrigeration units, stated that electric motors which burn internally do not cause an outside blaze. When a motor burns internally, there is smoke damage and soot, but no charred wood. Jennings was shown the motor as he testified in order that he might point out the armature thereon. It was the same part which Shilstone referred to as a rotor. Jennings concluded by asserting that he did not believe the fire originated within the motor because the solder in the *270 armature would have been melted by virtue of the internal heat and the solder in the motor was not melted to any great extent.
John C. Ackerman then appeared on defendants’ behalf and he also confirmed the other experts testimony relative to the results produced from a motor’s internal burning. After examining the motor from the refrigerator, he further pointed out that the rotor thereon was not burned sufficiently to warrant concluding that the motor had burned internally.
After hearing the evidence the trial judge refused to apply the doctrine of res ipsa loquitur and further concluded that the plaintiffs failed to prove that either Reily or Corkern were negligent with that certainty required by law.
Counsel for plaintiff argues that the trial judge erred in failing to apply the res ipsa loquitur rule of evidence, which, of course, would place the burden of establishing freedom from fault upon the defendants. Plaintiff contends that the following conditions release it from carrying the burden of proof and they were present in the instant case: (1) The accident ordinarily requires the negligence of a human agency for its occurrence, (2) it must he caused by an instrumentality within the actual or constructive control of the defendant, and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. Alternatively, plaintiffs assert they have borne the burden of proving defendants’ negligence.
Defendants insist that the doctrine of res ipsa loquitur is not applicable to the facts herein because plaintiff has failed to prove what or which appliance caused the fire in the Reilys’ apartment. They further insist that the judgment of the trial court was correct in finding that the plaintiffs utterly failed to carry the burden of proving fault on the part of any of the defendants.
An excellent discussion of the doctrine of res ipsa loquitur is contained in the case of Plunkett v. United Electric Service,[1] which also involved damages resulting from a fire. Plaintiffs point to this case to substantiate their contentions. The opinion therein in part states:
“This doctrine furnishes a rule of evidence, the applicability of which is to be determined on the conclusion of the trial. * * * It is appropriate in a case where the plaintiff cannot be expected to have any information as to the causes of the accident, whereas the defendant, on the contrary, must be assumed to he fully informed on the subject, and further where the accident is of the kind which ordinarily does not occur when due care has been exercised * * *
“In determining the applicability of the doctrine the courts often resort to the possession test, i. e., whether or not the instrumentality allegedly causing the accident was at the time in the exclusive possession and control of the defendant. * * * ” (Emphasis added.)
In the Plunkett case the doctrine of res ipsa loquitur was applied because plaintiff therein established by a preponderance of the evidence that the fire originated in an attic heater; and thereafter was not required to enumerate the specific defects therein that caused the conflagration. However, the instant case is distinguishable in that plaintiff has failed to establish that the refrigerator’s motor was the offending instrumentality. Therefore, plaintiff has not been relieved of proving defendants’ negligence.
The next question posed for our consideration is whether plaintiff carried the burden of proof. The answer thereto must be predicated upon a careful evaluation of the expert testimony adduced on behalf of the plaintiffs and the defendants.
In this connection it is pertinent to point out that the trial judge, in his written *271 reasons for judgment, expressed the opinion that:
“Not only have plaintiffs failed to prove negligence on the part of Cork-ern and his agents, and that they and their work are responsible for or caused the fire, but Corkern has proved that he and his employees were not negligent in performing their work, or responsible for, or caused the fire, * * * »
He also emphasized that the plaintiffs failed to produce evidence of fault on the part of the Reilys.
A careful analysis of the record convinces us that the trial judge was correct in assigning greater weight to the expert testimony adduced on behalf of the defendants.
Plaintiffs relied primarily on the testimony of A. L. Landers, who actually possessed no experience in connection with burned refrigerator motors other than those which he laboriously explained burned in his own home, and Cecil Shilstone, who, it will be recalled, employed Jennings as a refrigeration expert to examine the motor in question since he conceded that he was unqualified to do so himself; Shilstone later discarded this expert’s opinion merely because he disagreed with it.
Defendants, on the other hand, adduced convincing evidence from experts who have worked in the refrigeration trade for many years and in substance they all agreed that the motor of the Reily refrigerator did not cause the fire.
Not only did plaintiffs fail to prove fault on the part of the defendants, but we are also convinced from the evidence inscribed in the record that the motor was not the cause of this fire. Therefore, the judgment of the trial court is correct.
Counsel for the defendant Reily raised the issue of liability as between the lessor and the lessee, but in view of the conclusion which we have reached herein, we find it is unnecessary to discuss this aspect of the case.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. 1948, 214 La. 145. 36 So.2d 704, 708, 3 A.L.R.2d 1437.