80 So.2d 418

Mrs. Merry Christmas SMITH, Widow of James Mullally,

v.

WESTCHESTER FIRE INSURANCE COMPANY OF NEW YORK.

No. 39626.

April 25, 1955.

Dobin Friedman, Chester F. Owens, New Orleans, for plaintiff-appellant.

Adams & Reese, New Orleans, for defendant-appellee.

MOÏSE, Justice.

Mrs. Merry Christmas Smith, widow of James Mullally, the plaintiff-appellant, took out a windstorm and hail policy on her property 1452–1454 St. Mary Street, with a maximum insurance liability of $3,000.

Plaintiff alleged that her premises were damaged to the extent of $6,325 by the hurricane or windstorm which struck the City of New Orleans on September 19, 1947.

After weighing all the evidence, the court rendered judgment for damages sustained, in the sum of $851, with legal interest from judicial demand, and for all costs.

Plaintiff prosecutes an appeal to this Court.

Under the provisions of Rule VIII, Section 3, of the Supreme Court of Louisiana, a motion to dismiss the appeal was filed by the defendant on March 22, 1953, on the ground that since five years had elapsed without any steps having been taken in its prosecution the suit was abandoned.

Plaintiff, Mrs. Merry Christmas Mullally, died on May 21, 1951. On May 24, 1951 (four months before the expiration of the five years) a motion for preference was filed in this Court in the name of the original plaintiff. On the day set for trial in this Court, a motion was filed to sub-

stitute as appellant Mrs. Myrtle Mullally Evans, the daughter of the deceased plaintiff.

Rule VIII, Section 3, of this Court reads:

"Any appeal, now or hereafter pending on the regular docket, in which five years have elapsed without any steps being taken in the prosecution thereof, shall be considered as abandoned and the clerk is directed to furnish the court with the name and number of any such appeal or appeals on or before the final session for the hearing of arguments in each court term. Any such appeal or appeals shall also be posted by the clerk on the calendar for summary dismissal by the court on the final day of the session. The provisions of this section are intended to be retroactive and to become effective upon the adoption of these rules but the right is reserved to the appellant or appellants in any case now pending, in which no action has been taken for five years, to move for the transfer of the case to the preference docket within a period of six months following the publication of these rules in the advance sheets of the Southern Reporter."

In the case of Cocke v. Cavalier, 175 La. 151, 143 So. 33, 34, this Court said:

"At whose suggestion or upon whose motion the case was continued does not appear. But that does not matter for it affirmatively appears that on March 14, 1924, less than five years from the date on which the suit was filed and five times thereafter, once in each of the years 1925, 1926, 1928, 1929, and 1930, the plaintiff, through his attorneys, appeared in court, and by formal motion asked that the case be placed upon the summary call docket.

"These were 'steps in the prosecution' of the case within the intendment of the statute. The word 'prosecution', as used in the statute, means any move made by plaintiff to continue, to follow up, or to go on or proceed with the case. In order that the case might be finally disposed of and that 'final judgment' might be obtained, it was necessary that it be set down for trial. An active move made by a plaintiff to have his case placed on the summary docket of the court so that it may be reached and set for trial is a necessary step in the prosecution thereof."

Filing of a motion for preference by plaintiff's counsel was notice to the defendant of the prosecution of this appeal, and the proper party litigant was substituted as appellant before hearing in this Court. Therefore, the motion to dismiss will be denied. Cambon Bros. v. Suthon, 148 La. 669, 87 So. 512.

The issue now drawn by appellant is for an increased amount in damages, and defendant's answer to the appeal is for a reduction in the amount awarded. The issues are factual.

The property involved contained eight apartments made up of a two and one-half story wood frame building and a two story wood frame building, both joined together as one structure. Admittedly, they were damaged during the hurricane.

The record makes evident that an examination of the premises made five or six months after the hurricane disclosed that there was a sinkage, broken pipes, partial roof destruction, leaking, cracking of the chimney, and a wresting apart of the two buildings.

We are only concerned in—

1. The cause of the damage; and

2. The damage that can be directly attributed to the windstorm.

■ The testimony of some of the witnesses is to the effect that the hurricane caused all the damage. The weight of the evidence is not to be determined by mere numerical number of witnesses, but from the physical fact and the believable evidence to which the law applies.

■ Three contractors submitted estimates, ranging up to $7,000 as the cost of repairing the damages. Colonel Hiram A. R. Gray, an engineer by profession, tes-tified at length to the effect that the entire damage was caused by the hurricane and that the total repair would amount to approximately $6,325. He was corroborated in these views by Mr. I. William Ricciuti, an architect.

Witnesses for the defendant testified that the structure was about fifty years old, and that it was sinking and in a state of decay even before the hurricane. They contended that the damaged condition was aggravated by the hurricane.

The trial judge, who saw and heard the witnesses, is in a better position than we to draw a conclusion from the facts. He stated:

"Of all the lay and expert witnesses who testified, Mr. Herbert A. Benson, Architect, was the only completely disinterested witness. His examination of the premises in February, 1948, was in the interest of plaintiff and as the building expert of the building and loan association which held a mortgage on the premises. * * *

"Mr. Benson is a prominent architect in this City, and has had many years experience in the construction and repair of structures damaged by hurricanes and windstorms.

"His testimony convinced me that most, if not all of the damage is due to the subsidence of the soil and the

shifting of the foundations occasioned by the lowering of the City's water level. I am equally satisfied that some of the damage occurred after the hurricane because of the delay in making repairs.

"I was particularly impressed by Mr. Benson's testimony with reference to the crack in the chimney in the attic, which he contends was due to subsidence of the building long before the hurricane. He explained that the crack was dirty and covered with cobwebs. This condition takes a long time to develop, particularly in a chimney protected in a closed attic from the wind and elements."

In addition to the $427 recommended by Mr. Benson, the trial judge allowed $424 for certain itemized repairs.

We find no manifest error in the trial judge's analysis of the evidence, and, unless shown to be manifestly erroneous, his judgment on the question of fact should not be disturbed. Succession of Gaines, 227 La. 318, 79 So.2d 322; Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367.

For the reasons assigned, the judgment of the district court, awarding $851 as damages for the loss sustained to the property 1452–1454 St. Mary Street, New Orleans, Louisiana, by the windstorm, is affirmed at plaintiff's cost.