86 So.2d 89 (1956)
229 La. 426
Robert R. SAUNDERS
v.
James L. WALKER, d/b/a Jlmmle Walker Home Appliances et al.
No. 41914.
Supreme Court of Louisiana.
January 16, 1956.
Rehearing Denied February 20, 1956.
*90 Lamar Polk, Alexandria, Theus, Grisham, Davis & Leigh, Monroe, for defendants-appellants.
Peterman & Burden, Alexandria, for plaintiff-appellee.
MOISE, Justice.
This is a suit in which Robert R. Saunders sued James L. Walker, d/b/a Jimmie Walker Home Appliances, and his insurer, the Manufacturers Casualty Insurance Company, for damages in the sum of $22,500, alleged to have been sustained by him as a result of the installation of a defective heating and air-conditioning system in his home.
A judgment of non-suit was entered, and on applications of both defendants for rehearing the case was reopened and evidence adduced within the permissive latitudes of the orders of court. On the conclusion of the trial, the court rendered *91 judgment against the defendants, in the sum of $10,000, and against James L. Walker, personally, in the sum of $1,436.79, from which defendants have appealed.
The judgment now on appeal is one in which the court applied the doctrine of res ipsa loquitur"A matter which speaks for itself", which, in proper cases, constitutes a crystallization of a maxim of common sensea rule of evidence. Gerald v. Standard Oil Co. of Louisiana, 204 La. 690, 16 So.2d 233. See, Roy v. Louisiana State Department of Agriculture and Immigration, 216 La. 699, 44 So.2d 822.
The evidential facts are that the defendant, James L. Walker, doing business as Jimmie Walker Home Appliances, is engaged in the business of selling, installing and servicing heating and air conditioning systems and has had considerable experience therein over a period of several years. During the early stages in the construction of plaintiff's residence, Walker was furnished with a set of plans (duplicates of plaintiff's Exhibits 1 and 2) prepared by DeLaureal and Moses, an engineering firm specializing in air conditioning, showing the design of an air conditioning system to be installed. The system called for by these plans is composed of water chilling apparatus to be used for cooling and a boiler to be used for heating. Walker did not bid on the project, and for reasons not apparent in the record plaintiff abandoned the idea of installing a system as originally designed. Walker thereafter negotiated with plaintiff for the installation of a conventional system, resulting finally in a contract for the Servel System herein involved. The contract was not formal. It was entered into following the submission to Walker of a set of plans prepared by DeLaureal and Moses, dated August 8, 1950. The original plans contain a design for a flexible rubber hose connection, while no such design appears on those last prepared.
Not long after beginning the occupancy of his new home, plaintiff began to enter complaints about the heating system. He used the heating system until April, and new complaints arose after the cooling cycle was put in operation some time in May.
Frequent consultations were held between the parties, the architects and engineers, concerning the complaints made, and the defendant Walker made adjustments and corrective work. During this period, the copper tubing was cut and spliced with flexible rubber hose connection.
Plaintiff alleged that Walker's employees or agents installed this 6½ inches long rubber hose or coupling in a careless and negligent manner; that water flowed through this hose to the unit at the rate of approximately sixty gallons per minute under great pressure; that the hose was not of the thickness and quality designed to withstand the pressure; that it was not attached with double clamps on each end as it should have been; that the pipe was not threaded and the hose cemented therein for the required distance; and that the connection was defective and was negligently and carelessly made contrary to skilled, prudent and proper workmanship, all of which was at the time unknown to plaintiff.
Defendants answered, denying liability and claiming that all of the installation was done in a workmanlike manner. Alternatively, they pleaded estoppel and averred that after the unit was placed in operation and plaintiff had made repeated complaints, especially with respect to vibration, Walker was directed by plaintiff's engineer, the firm of DeLaureal and Moses, employed by plaintiff's architect, the firm of Barron, Heinberg and Brocato, to splice the rigid 1¼ inch copper tubing in the intake and exhaust lines near the air conditioning unit in the attic and replace same with rubber hose. It is defendants' contention that the correction was made at the instruction of plaintiff's engineer.
In our opinion, the record clearly reflects that the rubber hose was connected as alleged by plaintiff. All experts who testified stated that if the rubber hose had been of the proper length and properly attached, it would have worked satisfactorily. The record further reflects that during *92 the period of endeavoring to adjust the air conditioning system to a proper working condition, Mr. DeLaureal suggested that some flexible connection might be made. However, nowhere do we find in the evidence that Mr. DeLaureal specifically gave instructions for the insertion of a rubber hose in the fashion in which it was attached. The architect did not inspect the rubber insert. The actual splicing of the copper tubing and insert of the rubber hose was done by Mr. Claude Powell, a refrigeration service mechanic three years in Walker's employ, upon the instructions of Mr. George N. Patterson, Walker's air conditioning department manager.
The slipping of the rubber hose was the cause of the water leakage which damaged plaintiff's property.
In the early morning of September 8, 1951, plaintiff was awakened to discover considerable quantities of water coming through the ceiling in several rooms of his home, drenching walls, floors, carpets, furniture, drapes and fixtures. Upon going into the attic, he observed that the source of the water was the open end of a water supply line made of rigid copper tubing leading to the upstairs "Servel" unit and that the escaping water was being thrown with force against the rafters. It is an admitted fact in the case that the water poured from the line because, in some manner, one end of the flexible rubber hose inserted as a splice in the supply line had become disconnected from the tubing.
The defendants further contended that the application of the doctrine of res ipsa loquitur did not apply, that the responsibility of the rubber hose connection was on the firm of DeLaureal and Moses, and that the instrumentality (the defective splicing of the rubber hose) was entirely under the control of plaintiff. We agree with the trial judge that the doctrine of res ipsa loquitur did apply in this case. If the thing (the rubber tubing) had been properly installed and had not been defective, it would not have become undone. Therefore, the trial judge crystallized the rules of common sense in applying the rule of evidenceres ipsa loquitur.
"Res ipsa loquitur is often found to be appropriate in cases involving explosions. It is not a rule of pleading or of substantive law; rather, it is a rule of evidence, the applicability of which is to be determined on the conclusion of the trial. * * *" Gerald v. Standard Oil Co. of Louisiana, 204 La. 690, 16 So.2d 233, 236. See, also, Roy v. Louisiana State Department of Agriculture and Immigration, 216 La. 699, 44 So.2d 822.
Defendants vigorously argue that since the plaintiff pleaded specific acts of negligence (which is true), the trial judge was in error in applying the doctrine of res ipsa loquitur. We reiterate:
"Res ipsa loquitur, meaning `the thing speaks (for) itself', is a rule of evidence, the applicability of which is to be determined on the conclusion of the trial. * * *" Hake v. Air Reduction Sales Co., 210 La. 810, 28 So.2d 441, 444.
In his writing, "The Nature of the Judicial Process (1921)", Mr. Justice Cardozo stated:
"Law suits are rather catastrophic experiences for the vast majority of men, and even when the catastrophe ensues the controversy relates more often not to the law but to the facts."
In the case of Hamiter v. Duncan, La.App., 78 So.2d 80, 82, the Court said:
"As has been many times iterated by the courts of this state the doctrine of res ipsa loquitur is a rule of evidence. We have been somewhat concerned in connection with the matter before us as to whether there are any specific requirements of pleading which are necessary as conditions precedent to the applicability and enforcement of the rule, but have come to the conclusion that specific pleading of the doctrine *93 is not required in cases where the facts themselves invoke its application. We find the pronouncement that the doctrine is a rule of evidence rather than a rule of pleading in 65 C.J.S., Negligence, § 220(3), pages 993, 994. * * *" (Italics ours.)
At the conclusion of the testimony, the trial judge properly applied the doctrine of res ipsa loquitur.
In Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447, and in Morales v. Employers' Liability Assur. Corporation, Ltd., 202 La. 755, 12 So.2d 804, 808, we adopted a rule reading in effect as follows:
"It is fundamental that negligence is never presumed from the happening of an accident, but the happening of an accident with its attendant circumstances may justify the inference of negligence."
The slipping off or coming aloose of the rubber hose justifies the inference of negligence on the part of the defendant Walker in the installation. It was incumbent upon Walker to exculpate himself from negligence. Davis v. Teche Lines, 200 La. 1, 2, 7 So.2d 365; Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, 709, 3 A.L.R.2d 1437. We recognize that there are exceptions to the principle that a defendant must have exclusive control and possession of the offending article for the doctrine of res ipsa loquitur to apply, and in the case of Plunkett, supra, we stated:
"But the fact of possession and control by the defendant is not always an essential element. The doctrine has been held to be applicable in numerous actions where the offending articles were not possessed and controlled by the defendants on the occurrence of the accident, such as those for damages resulting from exploding bottles of carbonated beverages, from leakage of drums of acid, and from the blowout of a plug in a cylinder of acetylene gas. Important though in actions of this class is that the plaintiff prove freedom of fault on the part of all through whose hands the instrumentality passed after it left the defendant. Motor Sales & Service, Inc., v. Grasselli Chemical Co., 15 La.App. 353, 131 So. 623; Auzenne v. Gulf Public Service Co., La.App., 181 So. 54; Auzene v. Gulf Public Service Co., La.App., 188 So. 512; Lanza v. De Ridder Coca Cola Bottling Co., La.App., 3 So.2d 217; Meyers v. Alexandria Coca-Cola Bottling Co., Ltd., La.App., 8 So.2d 737; Ortego v. Nehi Bottling Works, 199 La. 599, 6 So.2d 677; Hake v. Air Reduction Sales Company, supra."
In the instant case the plaintiff freed him-self from negligence, and the trial judge held:
"Suffice it to say here that plaintiff's claim of freedom from fault on his part and on the part of members of his household appears to be sustained by the evidence. Although the hose coupling was installed on a pipe in the attic which was used for storage, with the implication that persons from time to time went into the attic, nevertheless, this connection was installed out of normal reach, was not easily accessible, and, in fact, would not even be in the view of one walking about in the attic."
We conclude, as did the trial judge, that:
"Inasmuch as defendants have not offered a legitimate explanation as to the cause of the occurrence, and since the circumstances connected with it are such that unexplained they force the conclusion that it was caused by Walker's want of care, plaintiff is entitled to recover for his damages unless recovery is barred by one or more of the defensive issues raised by the pleadings.
"These defenses, in the main, are that the installation of the hose connection was done on instructions of plaintiff's engineering expert and at plaintiff's risk, and, that inasmuch as plaintiff's *94 architect and engineer inspected and approved the job as completed by the alteration of attaching the hose, an estoppel results against plaintiff holding defendants liable.
"The evidence in the record fairly reflects the conclusion that the hose connection was inserted as the result of either a suggestion or an outright directive from DeLaureal, plaintiff's engineer, to Walker's job foreman. It is also clear that no particular instructions were given as to how the work should be done. The record does not establish that plaintiff, or his architect or engineer were ever advised that the hose had been installed, or that any of them had ever actually seen it prior to the accident."
The trial judge further stated:
"No citation of authority or exhaustive discussion is necessary to conclude that defendants cannot escape liability for the installation of a faulty connection when the contractor was not following any particular specifications furnished by the owner or his agents in doing the work. Equally easy to reach is the conclusion that plaintiff can not be estopped in the absence of a showing that he or his agents had knowledge of the work and approved it. * * *" (Italics ours.)
With respect to the quantum of damages, we believe that after seeing and hearing the witnesses the trial judge arrived at a fair and just conclusion. We cannot declare that his findings are manifestly erroneous. McMahon v. Manufacturers Casualty Ins. Co., 227 La. 777, 80 So.2d 405; Smith v. Westchester Fire Ins. Co. of New York, 227 La. 812, 80 So.2d 418.
For the reasons assigned, the judgment of the trial court is affirmed at defendants' cost.
HAWTHORNE, J., dissents with written reasons.
HAWTHORNE, Justice (dissenting).
Since the majority opinion in this case discusses res ipsa loquitur at great length, I assume that it is under this doctrine that the plaintiff is being allowed to recover. I make this assumption because I have noted that the trial judge says in his reasons for judgment in this case that he is doubtful whether the evidence introduced by plaintiff to prove the specific negligence charged against defendant has established the latter's negligence to the point of legal certainty.
The doctrine of res ipsa loquitur is a rule of evidence which must be carefully applied or it will be abused. It is well settled in our jurisprudence that this rule of evidence can be used in a tort case only if the accident which damaged plaintiff was caused by an agency or instrumentality within the actual or constructive control of the defendant, if the accident is of a kind which ordinarily does not occur in the absence of negligence, and if the evidence as to the true explanation of the accident is more readily accessible to the defendant than to the plaintiff. Northwestern Mut. Fire Ass'n v. Allain, 226 La. 788, 77 So.2d 395, and numerous cases and authorities there cited.
In the instant suit the instrumentality which damaged plaintiff was clearly not within the exclusive control of the defendant. Moreover, it does not appear that the evidence as to the true explanation of the accident was so inaccessible to this plaintiff that he should be believed of the burden of proving negligence in this tort action.
On the question of whether plaintiff has proven the specific negligence which he alleged, I express no view. I do not think, however, that he can rely on the doctrine of res ipsa loquitur to recover in this case.