SAMUEL, Judge.
Plaintiff, subrogated fire insurer of a residence, instituted this suit for $9,980, the amount it paid its insured for fire damage to that property. The petition alleges the fire originated in the warm air furnace system and was caused by negligent and improper installation of the furnace; alternatively the petition specially pleads the doctrine of res ipsa loquitur. The defendants are: (1) Garden Plaza Corporation, the builder and owner from which plaintiff’s insured purchased the residence; (2) James C. Smith, d/b/a James C. Smith Contractors, the general contractor who constructed the building; and (3) Bituminous Casualty Company, the alleged insurer of the other two defendants.
Garden Plaza and Smith answered denying negligence in the installation of the furnace and alternatively pleading that, in the event of a judgment against them, judgment also should be rendered against Bituminous. Bituminous filed an answer in the form of a general denial of any liability and subsequently filed a motion for summary judgment seeking dismissal of the suit on the ground that their policy of insurance did not afford coverage of the fire damage.
The trial court referred the motion for summary judgment to the merits. After trial there was judgment against the plaintiff, dismissing its suit as to all defendants, *787 without ruling on the Bituminous question of coverage. Plaintiff has appealed.
In this court plaintiff contends: (1) the trial court erred in not applying the doctrine of res ipsa loquitur, the defendants failed to overcome the inference of negligence established by that doctrine and therefore plaintiff is entitled to a judgment as prayed; and alternatively (2) even if the doctrine of res ipsa loquitur is inapplicable, the evidence adduced at the trial requires a judgment for the plaintiff as prayed.
Many of the essential facts are not in serious dispute. Garden Plaza owned lots in a subdivision located in Belle Chasse, Louisiana. James C. Smith, who was also the president and majority stockholder of Garden Plaza, constructed homes on those lots for the corporation which then sold them to individual purchasers. One of those new and previously unoccupied homes, the building involved in this suit, was sold to plaintiff’s insured on July 12, 1961. The fire occurred on February 8,1962. The furnace had been installed by the contractor during construction in a closet approximately in the center of the building; the fire originated in that closet; and basically, the furnace was the cause of the fire.
Plaintiff’s insured and his wife testified the heater was used for- the first time about November 1, 1961, no work had been done on the heater or the heating system except that the filter had been cleaned with a vacuum cleaner twice before the fire (the last time being two weeks before), and the heater had functioned properly prior to the fire.
With regard to the question of whether or not the heater had been installed properly plaintiff offered the testimony of Mr. Charles W. Fox, Jr., the operator- of a company doing heating and air conditioning work, who was accepted by the trial court as an expert in the field of heating; defendants offered the testimony of Mr. John C. Heard, a plumbing and heating contractor, who also was accepted by the trial court as an expert in the field of heating, and Mr. Smith, the defendant contractor.
Mr. Fox testified he inspected the damaged property less than two weeks after the date of the fire at the request of an adjustment company. He found the furnace was a conventional upright heating unit manufactured by a concern named Grove. While he was not familiar with the Grove product, he was familiar with that type of heating unit. The furnace had been installed in a closet adjacent to a hallway and a small den. A return air grill, the face area of which was 18" x 12", was in the lower part of the closet. The only other ventilation was the fact that the closet was open to the attic. There were two registers (a register being the terminal end of a duct), one 8" x 6" mounted vertically in the living room-furnace closet wall and another, a 6" round ceiling type, mounted in the ceilingicommon to two bedrooms. The 6" register was'served by a 5" duct. He discussed the small amount of clearance from the furnace to the walls of the closet; but he admitted what constituted sufficient clearance would depend on the manufacturer’s specifications since some furnaces are constructed so that they may be installed in direct contact with combustible material. He was unable to say in this case whether the clearances were sufficient or insufficient because he had been unable to obtain such specifications due to the fact that the manufacturer of the furnace, Grove, had gone out of business. He felt there should have been three grills instead of one, two for combustion and ventilation and one for return air. He also felt the duct system was inadequate and that a “good average” would have been five registers /with larger ducts. In his opinion the primary cause of the fire was what he considered an inadequate duct system. He also testified the furnace was equipped with a limit switch, an emergency safety feature, which had to fail in order for the furnace to overheat sufficiently to cause the fire. Shortly after his inspection and prior to trial he had rendered a written report to the *788 adjustment company which stated that the inadequacy of the duct system, combined with the indication of a dirty filter and the failure of the limit switch, resulted in the overheating of the furnace and the fire.
Mr. Heard testified he was familiar with the Grove Model SA 85 upright type forced warm heat gas fired furnace equipped with wall type thermostat, the heater involved here, and its requirements and specifications for proper installation. He had this type of heater in his own office. In response to a hypothetical question based on the actual amount of clearance from the furnace to the walls of the furnace closet as found by the plaintiff’s' expert witness, Fox, this witness testified such clearances were proper and in accordance with the requirements of the American Gas Association. In response to another hypothetical question relative to the grill, the two registers and the duct, together with their sizes, all as found by Mr. Fox in his inspection and all as contained on a sketch drawn by Mr. Fox and introduced in evidence, Mr. Heard stated the entire installation was proper and in accordance with the standards and requirements for this particular heating unit.
Mr. Smith testified the manufacturer’s specifications and requirements had been followed in the installation of the heating unit in question. In addition, he had built twenty-four houses in the subdivision including the home purchased by plaintiff’s insured, all of which were built under FHA supervision. In order to obtain an FHA commitment it is necessary to submit complete plans and specifications, including a heating plan and heating lines. Only after the FHA approves these plans as satisfactory is the commitment issued. Thereafter three inspections are made by the FHA during construction. He identified a copy of the FHA satisfactory compliance, inspection report for the property here involved, which report was received in evidence. The thrust of Mr. Smith’s testimony relative to the FHA appears to be that if the proper standards and requirements for the heating unit had not been met the FHA would not have approved either the plans and specifications or the completed construction.
The trial court held the doctrine of res ipsa loquitur was inapplicable and plaintiff had failed to carry its burden of proving by a preponderance of the evidence that the defendants, or any of them, were negligent either through improper installation or an inadequate distribution system. In his reasons for judgment the trial judge stated that from the evidence presented he could not determine exactly what caused the fire other than, or in addition to, the fact that the limit switch had failed and such failure could have been the fault only of the switch manufacturer and not of any defendant. We agree with both conclusions and consider unnecessary a detailed discussion of the fact that plaintiff has failed to carry its burden of proof.
The doctrine of res ipsa loquitur .is a jurisprudential rule of evidence, the applicability of which is to be determined at the conclusion of the trial. When the doctrine is applicable the plaintiff need not allege or prove the particular acts of negligence which caused the accident; the accident itself creates an inferene of negligence and to escape liability the defendant must rebut and overcome that inference. Generally, exclusive possession and control of the instrumentality by the defendant is a necessary element in order for the doctrine to apply. But there are exceptions to this rule where the plaintiff proves freedom of fault on the part of all through whose hands the instrumentality passed after leaving the defendant, where the plaintiff cannot be expected to have any information as to the cause of the accident, whereas the defendant can be expected to be fully informed on the subject *789 and where the time elapsing between the installation and and the damage was such as to make it reasonably evident that the damage would not have been caused if the device had been free from defect and properly installed. Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704 (On Rehearing p. 710), 3 A.L.R.2d 1437; Smith v. Sears, Roebuck & Co., La.App., 209 So.2d 789, handed down this day; Bass v. Jones, La.App., 170 So.2d 181; Wilson v. Eagle Gas Company, La.App., 154 So.2d 270; Pearl Assurance Co. v. Reily, La.App., 127 So.2d 266.
Plaintiff relies on such cases as Plunkett v. United Electric Service, supra; Saunders v. Walker, 229 La. 426, 86 So.2d 89; Mosley v. Sears, Roebuck & Co., La.App., 167 So.2d 408; and Talley v. Brock Furniture Co., La. App., 81 So.2d 443. However, with the exception of Saunders, in all of those cases the accident occurred so shortly after the instrumentality was installed or serviced that it was unlikely that there could have been any other intervening cause. In Saunders there were continued complaints and meetings with architects and engineers regarding the unit beginning shortly after plaintiff’s occupancy.
In the instant case the unit was under the exclusive possession and control of plaintiff’s insured for approximately seven months prior to the fire; it had functioned properly whenever used for approximately three months; and the defendants had nothing to do with the unit during all of those seven months. During that time plaintiff’s insured not only operated the unit but cleaned the filter on at least two occasions and even plaintiff’s expert stated a dirty filter was, or at least could have been, a contributing cause of the fire. Under these circumstances the doctrine of res ipsa loquitur is inapplicable. Smith v. Sears, Roebuck & Co., supra; Bass v. Jones, supra.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.