939 So.2d 379 (2006)
Randy THERIOT and Faye Theriot
v.
Alger Adam BERGERON, Jr., Gulf Fish, Inc. and Dakota Specialty Insurance Company.
No. 2005 CA 1225.
Court of Appeal of Louisiana, First Circuit.
June 21, 2006.
*380 Hilary G. Gaudin, Gretna, Leopold Babin, Houma, Counsel for Plaintiffs/Appellants, Randy and Faye Theriot.
Frederic Fondren, Houma, Counsel for Defendants/Appellees, Alger Bergeron, Jr., Gulf Fish, Inc. and Dakota Specialty Ins. Co.
Gary Beauchamp, Baton Rouge, William Culver, Jr., Assistant Attorney General, New Orleans, Counsel for Defendants, State of Louisiana, Department of Public Safety, and State Trooper Karla Billiot.
Before: WHIPPLE, McCLENDON and WELCH, JJ.
WHIPPLE, J.
In this appeal, plaintiffs challenge the trial court's judgment, dismissing plaintiffs' suit for damages for personal injury. For the following reasons, we affirm.

*381 FACTS AND PROCEDURAL HISTORY
On May 7, 2002, Louisiana Department of Transportation and Development (DOTD) employees were repairing light signals at the intersection of Louisiana Highway 61 (Airline Highway) and North Lester Avenue in Jefferson Parish. Two DOTD trucks with extendable buckets were parked back end to back end in the right lane of westbound traffic on Airline Highway.[1] Plaintiff, Randy Theriot, an electrical specialist leaderman for DOTD, was suspended above the intersection in a bucket attached to one of the DOTD work trucks, repairing the traffic signals.
As depicted in photographs of the scene, the traffic signal post was located on the side of Airline Highway, with an arm that extended over both westbound lanes of travel. The traffic signals were connected to the arm, with the signal furthest to the left being suspended above the left-hand lane of westbound traffic. Plaintiff was working on the amber or yellow section of the traffic signal furthest to the left, suspended above the left lane of westbound traffic on Airline Highway. Thus, as plaintiff worked on the signal, traffic was passing beneath him. Plaintiff was facing the traffic signal as he was working on it, with his back to the traffic below.
Louisiana State Trooper Karla Billiot was directing traffic at the intersection while the traffic signals were being repaired. Billiot parked her police unit, with its blue lights flashing, in the right-hand lane of the westbound lanes of Airline Highway and was directing traffic into the left-hand westbound lane. As she was directing traffic, Billiot was facing the oncoming traffic with her back to plaintiff. Traffic on Airline Highway headed west was backed up about one-half mile to one mile from the intersection.
One to two minutes before the accident at issue, Billiot directed a large eighteen-wheeler through the intersection. According to Billiot, she guided the eighteen wheeler through the intersection while maintaining eye contact with the driver to ensure that there was enough clearance for the truck to pass. After the eighteen wheeler was able to safely pass under the intersection, Billiot concluded that "anything out there" could pass under the DOTD bucket safely.
Bergeron, who was employed as a commercial truck driver by defendant, Gulf Fish, Inc., was driving a six-wheel, single-axle truck owned by Gulf Fish in a westerly direction on Airline Highway as he approached the intersection in question. Because of the traffic delays preceding the intersection, Bergeron had seen the DOTD truck and plaintiff working in the bucket about five to ten minutes before he passed through the intersection and under the bucket. As Bergeron approached the intersection, Trooper Billiot simply waved him through, given that the eighteen wheeler that had traveled through the intersection one to two minutes before Bergeron had traveled through with sufficient clearance. Because he was directed to proceed by the trooper and because it appeared to Bergeron that he had sufficient clearance to pass under the DOTD bucket, he proceeded through the intersection. However, as he approached the bucket, the top of the truck he was driving struck the bucket in which plaintiff was working. The bucket then skidded across the top of Bergeron's truck until the truck cleared the intersection. Due to the force *382 of the impact, plaintiff's hardhat was knocked off his head and fell to the ground below and plaintiff's body was thrown forward. However, plaintiff was not ejected from the bucket because he was wearing a safety harness.
Following the accident, plaintiff sought medical treatment for complaints of low back pain and left leg and thigh pain, and he was ultimately referred to a pain management specialist for treatment of lumbar facet pain.
Plaintiff instituted this suit against Bergeron; Gulf Fish, Bergeron's employer; Dakota Specialty Insurance Company, Gulf Fish's insurer; Billiot; and the State of Louisiana, through the Department of Public Safety and Corrections (DPSC), Billiot's employer. Plaintiff contended that Billiot was at fault in causing the accident for directing traffic through the intersection in a careless and inattentive manner, including the Gulf Fish truck driven by Bergeron. Plaintiff further averred that Bergeron was at fault in causing the accident for, among other things, failure to maintain control of his vehicle, failure to maintain a proper lookout and driving in a careless and reckless manner.[2] Thereafter, the State of Louisiana, Division of Administration, Office of Risk Management, intervened in this matter, seeking reimbursement of workers' compensation benefits paid to plaintiff following the accident.
Plaintiff's claims against Billiot and DPSC were later dismissed with prejudice on exceptions of no right of action and no cause of action on the basis that plaintiff, as a state employee, was specifically barred from bringing an action in tort against his employer, the State, through another state agency. Thus, the matter proceeded to trial on plaintiff's claims against Bergeron, Gulf Fish, and Dakota Specialty Insurance Company and on the State's intervention.
Following a bench trial, the trial court found in written reasons for judgment that plaintiff had not borne his burden of proving that Bergeron had been negligent. Accordingly, the trial court rendered judgment dismissing plaintiff's claims and the State's intervention with prejudice.[3]
From this judgment, plaintiff appeals, assigning the following as error: (1) The trial court erred as a matter of law or, alternatively, committed manifest error in finding defendants free from fault; and (2) the trial court erred in failing to award reasonable damages to plaintiff. The State has not appealed the dismissal of its intervention. Thus, the judgment is final in that respect.

FAULT OF BERGERON (Assignment of Error No. 1)
In this assignment of error, plaintiff contends that the trial court erred in finding *383 that Bergeron was not negligent in causing the accident and, thus, in finding defendants free from liability. He avers that, as a commercial truck driver, Bergeron should have been held to a high standard of care and, additionally, that as a motorist traveling in the vicinity of a highway worker, Bergeron should have also been held to a higher duty of care than the highway worker. Plaintiff further avers that a motorist is not relieved of his duty of reasonable care simply because a police officer directs him to move through an intersection.
All motorists have a never-ceasing duty to maintain a sharp lookout and to see that which in the exercise of ordinary care should be seen. Duzon v. Stallworth, XXXX-XXXX (La.App. 1st Cir.12/11/02), 866 So.2d 837, 859, writs denied, XXXX-XXXX, XXXX-XXXX (La.5/2/03), 842 So.2d 1101, 1110. Moreover, our courts have recognized that a professional truck driver is a superior actor in the eyes of the law and, as such, is held to a high standard of care. Davis v. Witt, XXXX-XXXX (La.7/2/03), 851 So.2d 1119, 1128-1129. The duty owed by a truck driver includes the duty to know the machine he is operating and the size of the trailer and, thus, to ascertain whether he has enough clearance to pass under an obstruction. See New Orleans Shrimp Co., Inc. v. Duplantis Truck Lines, Inc., 283 So.2d 521, 527 (La. App. 1st Cir.1973), and Clark v. City Con Oil Corporation, 150 So.2d 784, 787 (La. App. 3rd Cir.), writ refused, 244 La. 395, 152 So.2d 62 (1963).
Additionally, when a highway worker is busy in the street or highway, under circumstances indicating that he is not watchful and is depending on the protection of signs, barricades or flagmen, the driver of a motor vehicle owes a higher duty of care than the worker. Brooks v. Allred, 573 So.2d 1301, 1303 (La.App. 2nd Cir.1991); Payne v. Fimiano, 489 So.2d 332, 334 (La.App. 4th Cir.1986).
However, in finding no liability on the part of defendants, the trial court relied in part on LSA-R.S. 32:231 and 32:56, which provide in part as follows:
The driver of any vehicle shall obey the instructions of any official traffic-control device applicable thereto placed in accordance with the provisions of this Chapter, unless otherwise directed by a traffic or police officer, subject to the exceptions granted the driver of an authorized emergency vehicle in this Chapter.
LSA-R.S. 32:231(A).
No person shall fail or refuse to comply with any lawful order or direction of any police officer or weights and standards police officer invested by law with authority to direct, control, or regulate traffic.
LSA-R.S. 32:56(A).
These statutes impose a duty upon a motor vehicle operator to comply with any lawful order or directive of any police officer invested by law with the authority to direct, control or regulate traffic, irrespective of the instructions or signals of a traffic control device. Landry v. State Farm Insurance Company, 529 So.2d 417, 421 (La.App. 1st Cir.1988); Goff v. Sarradet, 394 So.2d 655, 656 (La.App. 1st Cir. 1980), writ denied, 399 So.2d 600 (La. 1981).
Under certain circumstances, a motorist will be relieved of liability for causing an accident if he acted in accordance with directions of a traffic control officer. Blair v. Tynes, 621 So.2d 591, 596 (La.1993). While directions of a traffic officer do not completely relieve a motorist of all obligations, where the testimony shows clearly that the defendant motorist *384 moved forward in compliance with the directions of the traffic officer at a slow speed and in a careful and prudent manner, he cannot be charged with negligence. Sutter v. Travelers Insurance Company, 167 So.2d 517, 518 (La.App. 4th Cir.), writ refused, 246 La. 916, 168 So.2d 823 (1964).
In the instant case, no one actually witnessed the moment of impact between the top of Bergeron's truck and the DOTD bucket in which plaintiff was working. Bergeron acknowledged that he had seen and was aware of plaintiff working in the bucket on the traffic light above the left-hand lane of westbound traffic for five to ten minutes prior to entering the intersection. He further testified that he did not see plaintiff lower the bucket at any time prior to the impact. With regard to how the accident occurred, Bergeron testified that as he approached the intersection, it appeared to him that he had enough room to pass under the bucket. Thus, he proceeded through the intersection at a speed of less than ten miles per hour when the trooper waved him through.
Trooper Billiot testified that prior to directing traffic at the intersection in question, she met with DOTD personnel to discuss exactly what needed to be done. She further stated that she instructed DOTD personnel at that meeting to notify her if they needed to make any movements that would require her to stop traffic. Trooper Billiot testified that one to two minutes before she waved Bergeron through the intersection, she had assisted an eighteen wheeler that was much larger than Bergeron's truck through the intersection.[4] Thus, when Bergeron approached the intersection, she waved him through, assuming that he also could safely pass under the bucket.
Because Billiot had her back to plaintiff as she directed traffic, she did not witness whether plaintiff had lowered the bucket prior to the impact. However, she stated that during the time that she was assisting the eighteen wheeler, the bucket was located in relation to the traffic light in the "yellowish red area" and plaintiff was working on the very top of the traffic light. She further stated that when she turned to view the bucket after she heard the impact, the bucket was below the green light and plaintiff appeared to have been working on the yellow or green light.
Additionally, Trooper Billiot testified that when she talked to plaintiff after the accident, he told her that he had been trying to tighten down the last nuts and bolts and that he had lowered himself.[5] According to Billiot, despite her instruction to DOTD workers to warn her if she needed to stop traffic, neither plaintiff nor any other DOTD worker told her that plaintiff was going to lower the bucket.
According to plaintiff, although he spoke with Trooper Billiot before starting work at the intersection, she did not have a meeting with all of the DOTD workers and she did not tell him to notify her before he *385 moved the boom. Nonetheless, plaintiff denied that he had moved the bucket prior to the impact, although he did acknowledge that he alone controlled the movement of the bucket. Plaintiff further claimed that he had never worked on the top section of the signal because it was already mounted by another DOTD worker before plaintiff went up in the bucket. Rather, he explained, in the five to ten minutes prior to the accident, he had been working on the amber or yellow section of the traffic light. Plaintiff further denied that he had ever tightened or adjusted any nuts or bolts or that he had ever told anyone that he had done so.
In concluding that plaintiff had failed to prove that Bergeron was negligent in causing the accident in question, the trial court made a specific credibility determination, finding the testimony of Trooper Billiot and Bergeron to be more credible. When factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given great deference by the appellate court. Guarantee Systems Construction & Restoration, Inc. v. Anthony, 97-1877 (La.App. 1st Cir.9/25/98), 728 So.2d 398, 400, writ denied, 98-2701 (La.12/18/98), 734 So.2d 636. Thus, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Succession of Brantley, 99-2422 (La.App. 1st Cir.11/3/00), 789 So.2d 1, 7, writ denied, XXXX-XXXX (La.3/30/01), 788 So.2d 1192.
Based on its acceptance of Trooper Billiot's and Bergeron's version of events, the trial court found that Bergeron "was operating a safe vehicle in a safe method when he approached the intersection," that he had followed the direction of Trooper Billiot to proceed through the intersection in compliance with LSA-R.S. 32:56 and 32:231, that he proceeded in "a careful and safe manner," and that he "took reasonable steps to insure that he safely traversed the intersection which included obeying the instruction of Trooper Billiot who motioned [Bergeron] to proceed through the intersection."
While the trial court did not make a specific finding that plaintiff had lowered the bucket immediately prior to the accident, given that a larger and higher truck had proceeded through the intersection only one to two minutes before the accident without incident and given Trooper Billiot's testimony regarding the location of the bucket minutes before the accident and immediately after the impact, the record supports the trial court's apparent conclusion that plaintiff had in fact lowered the bucket shortly before impact. Bergeron proceeded through the intersection at the direction of Trooper Billiot at a slow rate of speed, and the record supports an inference of fact that plaintiff lowered the bucket shortly before impact and after Bergeron could no longer see the bucket, leading to the accident in question. Thus, considering the evidence as a whole, the trial court could have reasonably concluded there was no negligence on the part of Bergeron that caused the accident, but rather that it was the sole negligence of plaintiff, in lowering the bucket immediately prior to impact without first warning anyone or ascertaining if it was safe to do so, that caused the accident. Accordingly, we cannot conclude that the trial court was manifestly erroneous in its finding that Bergeron was not negligent herein. Because we find no merit to this assignment of error, we pretermit discussion of assignment of error number two regarding damages.

CONCLUSION
For the above and foregoing reasons, the October 17, 2005 judgment dismissing *386 plaintiff's claims with prejudice is affirmed. Costs of this appeal are assessed against plaintiff, Randy Theriot.
AFFIRMED.
McCLENDON, J., concurs with the result reached by the majority.
NOTES
[1] According to Louisiana State Trooper Karla Billiot, while the lanes of Airline Highway are marked as "north" and "south," the flow of traffic is actually west and east. Thus, for ease of discussion, we will refer to the lanes of travel at issue herein as the westbound lanes of travel.
[2] Plaintiff had also averred that Bergeron was negligent in operating a vehicle that exceeded the maximum height requirement for operation on Louisiana roads. However, on appeal, plaintiff has abandoned this argument.
[3] On July 1, 2005, this court, ex proprio motu, issued a show cause order, ordering the parties to show cause why the appeal should not be dismissed on the basis that the trial court's judgment did not appear to contain language actually disposing of or dismissing plaintiffs' claims. Thereafter, this court issued an interim order on September 19, 2005, remanding the appeal to the trial court for the limited purpose of having the trial court sign a valid written judgment in accordance with LSA-C.C.P. art. 1918 and ordering supplementation of the record with the new judgment within 30 days. The trial court then rendered an "Amended Judgment" on October 17, 2005, dismissing plaintiffs' suit with prejudice, and that judgment was made a part of the appellate record. Thus, on December 5, 2005, this court recalled the rule to show cause and maintained the appeal.
[4] Billiot acknowledged that she did not measure the height of the eighteen wheeler that she had assisted through the intersection. However, she testified that she specifically recalled that the rear of the trailer had a measurement of 110 inches (or 9 feet, 8 inches) on it, indicating to her the height of the trailer. The truck driven by Bergeron measured 12 feet, 6 inches. It is unclear from the record whether the 110-inch measurement on the trailer of the eighteen wheeler was a measurement from the ground to the top of the trailer or was a measurement strictly of the trailer itself.
[5] Trooper Billiot acknowledged that she had not mentioned in her accident report plaintiff's statement about lowering himself. When questioned as to why she did not include this statement, she testified that she did not think it was significant.