KUHN,
dissenting in part.
|,1 dissent from the majority’s position insofar as it affirms the trial court’s judgment finding the defendant driver, Mr. Jerry Briggs, solely at fault in causing the automobile accident. A review of the record demonstrates there is no support for assessing Mr. Briggs with 100% fault. Mr. Briggs had a duty to maintain a sharp lookout and to see that which in the exercise of ordinary care should have been seen. Theriot v. Bergeron, 05-1225, p. 6 (La.App. 1st Cir.6/21/06), 939 So.2d 379, 383. In assessing all fault to Mr. Briggs, however, it is apparent the trial court failed to consider La. R.S. 32:281 A, which provides, “The driver of a vehicle shall not back the same unless such movement can be made with reasonable safety and without interfering with other traffic.” Clearly, the trial court ignored that plaintiff, Mr. Terry Lee, violated this statutory duty by blocking at least a portion of the northbound travel lane of Juban Road with no consideration for approaching traffic, while he backed his trailer into his private driveway. Because there were at least two vehicles in the southbound lane of travel, which had come to a stop while Mr. Lee backed his trailer into the driveway, the record demonstrates that Mr. Briggs was not able to use the southbound lane to avoid colliding with Mr. Lee, without placing his life and the 12Iives of other people in danger. The trial court’s apportionment of 100% fault to Mr. Briggs and no fault to Mr. Lee was clearly wrong and contrary to the evidence.
Further, it is apparent that the trial court did not consider all of the Watson factors in assessing fault and, in effect, the trial court applied the doctrine of last clear chance, without considering the risks *367 posed by Mr. Lee’s conduct. In Watson v. State Farm, Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985), the court explained the appropriate considerations for a comparative fault analysis, as follows:
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Thus, the principles considered in the application of the last clear chance doctrine are subsumed by the comparative fault analysis. The application of the last clear chance doctrine is not, therefore, a separate consideration for the trier of fact. Gibson v. State through Dept. of Transp. and Development, 95-1418 (La.App. 1st Cir.4/4/96), 674 So.2d 996,1004.
Applying the Watson factors to the instant case, Mr. Lee’s conduct of blocking the northbound travel portion of the roadway while he backed a trailer into his driveway presented a great risk of injury to the other motorists in the area. He presented no testimony to justify his actions or to explain the necessity of why he engaged in such conduct. Otherwise, he took no action, such as utilizing a flagman, flares, or cones that could have possibly alerted other drivers of the dangers of his actions. Admittedly, Mr. Lee’s conduct was inadvertent without consideration for the dangers his conduct presented to oncoming traffic. However, |sthe risk posed was great, and there was no apparent need for his conduct or any other extenuating circumstances to justify his actions. If he had given thought to the dangers posed by his conduct, he surely could have prevented the accident.
On the other hand, the trial court found that Mr. Briggs “was operating his vehicle in a manner which was too fast for the conditions- [Mr. Briggs] had time to see [Mr. Lee’s] vehicle partially blocking the road. Had [Mr. Briggs] been driving slower or paying more attention, he could have avoided the accident. He had the duty to look out for [Mr. Lee’s] vehicle.” Mr. Briggs estimated his speed at 45 miles per hour, and Ms. Shirley Lee testified that Mr. Briggs was “coming pretty fast.” However, the record does not establish the posted speed limit for the area in which the accident happened. The testimony also supported that it was “dry.” Admittedly, there is conflicting testimony regarding whether the accident occurred during the day, at dusk, or in the evening. Assuming the trial court determined that the accident occurred during the day when lighting conditions were optimal for Mr. Briggs to see Mr. Lee backing his trailer into the driveway, there is no evidence in the record to support a factual finding that Mr. Briggs was travelling in excess of the posted speed limit. This fact cannot be assumed based on the testimony presented.
Mr. Briggs testified that he first noticed Mr. Lee’s vehicle when he rounded the curve near Mr. Lee’s house. He estimated he was 200 to 300 feet away from Mr. Lee’s vehicle. Mr. Lee testified that he saw Mr. Briggs approaching from 300 to 400 feet away, but he was unable to completely clear the lane of travel before Mr. *368 Briggs approached. Mr. Briggs testified that he applied his brakes when he noticed that his travel lane was obstructed, and he swerved his vehicle to the left, but despite this action, he still hit the left, front side of Mr. Lee’s truck. The trial court found that Mr. Briggs was inattentive. Regardless of the posted speed limit, he should have been travelling at a speed at which he could respond to other Rmotorists or obstructions in his travel lane. Because the testimony supports a finding that there were no obstructions that would have prevented Mr. Briggs seeing Mr. Lee’s truck in the roadway from at least 200 to 300 feet away, the trial court correctly concluded that he breached his duty to maintain a sharp lookout and to see that which in the exercise of ordinary care should be seen. Mr. Briggs’ conduct was inadvertent and presented a risk of danger to others on the roadway. Mr. Briggs, however, had to react quickly to the situation presented to him with no advance notice of the dangers presented by Mr. Lee’s conduct.
As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. Based on the above considerations, I would conclude that the trier of fact’s allocation of fault was clearly wrong and manifestly erroneous. Only after making a determination that the trier of fact’s apportionment of fault is clearly wrong can an appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest. Clement v. Frey, 95-1119 (La. 1/16/96); 666 So.2d 607, 609, 610. Based on these considerations, I would raise Mr. Lee’s fault to 50% and lower Mr. Briggs’ fault to 50%.